# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRNELL MCCOY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MCCORMICK & COMPANY, INC.,<br><br>　　　　Defendant. | Case No. 1:25-cv-00231-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>ORDER DISCHARGING JUNE 11, 2025 ORDER TO SHOW CAUSE<br><br>(ECF No. 10, 19)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

　　Plaintiff Darnnell McCoy ("Plaintiff") brings this putative class action under various California consumer and common laws, alleging the label "Crafted and Bottled in Springfield, MO, USA," appearing at times with "American flavor in a bottle," on Defendant McCormick & Company, Inc.'s ("Defendant") packaging for French's mustard products is misleading because such products contain foreign-made components. (ECF No. 1.) Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 10.) The Court held a hearing on June 25, 2025. (ECF No. 23.) Counsel Pamela Prescott appeared on behalf of Plaintiff and Counsel Amit Rana appeared on behalf of Defendant. Having considered the moving, opposition, and reply papers, the record, and the arguments presented at the June 25, 2025 hearing, the Court recommends that Defendant's motion to dismiss be granted with leave to amend.

# I.

# BACKGROUND

Defendant owns, produces, manufactures, and sells products under numerous brands throughout the United States, including French's. (ECF No. 1 ("Compl.") at ¶ 21.) On April 11, 2023, Plaintiff searched Walmart's mobile application from his smart phone looking to purchase various food products while physically present in his then-residence in Manteca, California.[1] (Id. at ¶ 51.) Plaintiff saw French's Dijon Mustard advertised for sale, with viewable pictures of the front and the back of the product. (Id. at ¶ 52.) At the time of purchase, the product's packaging informed Plaintiff that it was "Crafted and Bottled in Springfield, MO, USA." (Id. at ¶ 53.) Additionally, the principal display panel on the front of the bottle stated, "AMERICAN FLAVOR IN A BOTTLE." (Id. at ¶ 54.) Relying on these representations and desiring to purchase a product that was made in the United States with ingredients from the United States, Plaintiff purchased French's Dijon Mustard for $3.42. (Id. at ¶ 56.)

Plaintiff generally alleges he has previously purchased other French's products, including French's Honey Dijon Mustard and French's Yellow Mustard, both of which also represent they are "Crafted and Bottled in Springfield, MO, USA." (Id. at ¶¶ 57-58.) Additionally, some bottles, depending on the size, state "AMERICAN FLAVOR IN A BOTTLE" on the front of the bottle. (Id.) Plaintiff alleges he understood these representations to mean that French's Dijon Mustard, Honey Dijon Mustard, and Yellow Mustard Products (collectively, "Products") were made in the United States with ingredients sourced domestically. (Id. at ¶ 57.) Plaintiff alleges he relied upon those representations when purchasing the Products. (Id. at ¶ 59.)

However, each of the Products Plaintiff purchased were allegedly made with and/or contained components that were sourced, grown, or made outside of the United States. (Id. ¶¶ 28, 62.) Plaintiff specifically alleges that the primary substantive ingredient of the Products is

---

[1] On June 11, 2025, the Court ordered Plaintiff to show cause why this action should not be transferred to the Sacramento division, given it appeared the action arose in San Joaquin County. (ECF No. 19 (citing Local Rule 120(d) (all civil actions "arising in" San Joaquin County shall be commenced in the Sacramento division)).) On June 13, 2025, Plaintiff responded, confirming that at the time he purchased the product on April 11, 2023, he resided in San Joaquin County; however, at the time the action was filed on February 20, 2025, Plaintiff resided—and continues to reside—in Tulare County. (ECF No. 22.) Because Plaintiff now resides in Tulare County and it remains undisputed that Defendant conducts business in Tulare County, the Court shall discharge its order to show cause.

mustard seed, which is sourced primarily, if not exclusively, from Canada. (Id. at ¶ 44.) Plaintiff also alleges that some varieties of Defendant's products, including French's Yellow Mustard, contain turmeric, another imported ingredient. (Id. at ¶ 45.)

Plaintiff alleges that he was deceived into purchasing the product based on the unqualified United States origin representations on the Products' packaging and believes that the Products containing foreign ingredients are not worth the purchase price paid. (Id. at ¶¶ 70, 74, 76.) Plaintiff alleges that had he been made aware that the Products were not actually "Crafted and Bottled in Springfield, MO, USA," he would not have purchased the Products. (Id. at ¶ 66.)

Plaintiff brings claims under the following causes of action: 1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; 2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; 3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; 4) breach of express warranty; 5) unjust enrichment; 6) negligent misrepresentation; and 7) intentional misrepresentation. Plaintiff prays for certification of a class action, declaratory relief, injunctive relief, damages, and reasonable attorney's costs and fees. (Compl. at p. 33.)[2]

## II.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1  elements of a cause of action, and must rise above the mere conceivability or possibility of
2  unlawful conduct that entitles the pleader to relief." Somers v. Apple, Inc., 729 F.3d 953, 959-60
3  (9th Cir. 2013) (cleaned up). "Factual allegations must be enough to raise a right to relief above
4  the speculative level." Twombly, 550 U.S. at 555.

In ruling on a Rule 12(b)(6) motion, the court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation omitted). But "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" need not be accepted. In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). "Dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory." Saloojas, Inc. v. Aetna Health of Cal., Inc., 80 F.4th 1011, 1014 (9th Cir. 2023) (cleaned up).

In alleging a claim grounded in fraud, "a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). A court may dismiss a claim for failing to satisfy the heightened pleading requirements of Rule 9(b). Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). Under this heightened pleading standard, a party must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting Davidson v. Kimberly-Clark, 889 F.3d 956, 964 (9th Cir. 2018)). "[C]laims based on an omission can succeed without the same level of specificity required by a normal fraud claim." Miller v. Ford Motor Co., No. 2:20-cv-01796-TLN-CKD, 620 F. Supp. 3d 1045, 1068 (E.D. Cal. Aug. 10, 2022) (citation and quotations omitted).

### III.

### DISCUSSION

Plaintiff claims that the "Crafted and Bottled in Springfield, MO, USA" representation on Defendant's Products, without any qualification, violates California and federal "Made in the U.S.A." labeling rules because particular ingredients—specifically, mustard seed and turmeric—

4

1  do not originate from the United States. Defendant argues that California has enacted statutory
2  safe harbors specifying circumstances in which "Made in the U.S.A." representations can be
3  lawfully included on the packaging. Defendant avers Plaintiff fails to plausibly plead that the
4  alleged foreign components within each Product fall outside the permittable thresholds warranted
5  by California's safe harbor provisions.

6  Plaintiff contends, as a matter of first impression, that the safe harbor provisions under
7  California law are preempted by federal law. However, even if California's safe harbors are not
8  preempted, Plaintiff maintains his complaint sufficiently alleges facts plausibly showing that a
9  substantial portion of Defendant's Products contain foreign ingredients that exceed the threshold
10 under the federal rule and California's safe harbors. Plaintiff avers the allegations necessary to
11 defeat Defendant's motion are contained within two YouTube videos, which Plaintiff contends
12 are incorporated by reference because the links are provided in a footnote in the complaint.

13 The Court first addresses incorporation by reference, then turns to Plaintiff's novel
14 argument that California's "Made in the U.S.A." statutory scheme is preempted by federal law.
15 Because the Court recommends finding it is not, the Court then addresses whether the complaint
16 plausibly pleads facts sufficient to escape California's safe harbor provisions.[3]

**A.   Incorporation by Reference**

"[T]he district court may, but is not required to incorporate documents by reference." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1159 (9th Cir. 2012). Under the incorporation by reference doctrine, "[a] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (quotations and citation omitted). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).' " Id. (quoting United

---

[3] Defendant also makes six alternative arguments in favor of dismissal of Plaintiff's complaint. Because the Court finds Plaintiff's complaint fails to allege *any* facts showing his claims are not barred by California's safe harbor provisions, the Court does not reach Defendant's alternative arguments. However, as noted at the June 25, 2025 hearing, some alternative arguments by Defendant are well-taken and should be considered when amending any pleadings.

5

1   States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003)).

2   Plaintiff alleges in his complaint that Defendant's "Products are made with mustard seed,
3   their primary substantive ingredient, which is sourced primarily, if not exclusively, from
4   Canada." (Compl. ¶ 44.) Plaintiff bookends this allegation with the following footnote:

> See Worldnite Journey, How French's Mustard Is Made – Mustard Factory, YouTube (October 30, 2024), at 0:48, https://www.youtube.com/watch?v=qnNiLGBBVjM ("…nearly all mustard production comes from Canada's vast prairies where farmers cultivate large plots of this valuable crop…"); Food Network, How French's Mustard Is Made (from Unwrapped), YouTube (July 20, 2020), at 0:40, https://www.youtube.com/watch?v=__YnRkT1weA ("…what you're looking at now is the mustard seed silos where we bring in our number one grade mustard seed from Canada…").

11  (Id. at n.4.)  At the June 25, 2025 hearing, Plaintiff argued that *every* statement made within each
12  YouTube video is incorporated by reference in his complaint.

13  The Court first considers whether the complaint refers to the YouTube videos. A
14  document *may* be incorporated into the complaint "if the plaintiff refers extensively to the
15  document or the document forms the basis of the plaintiff's claim." Khoja v. Orexigen
16  Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018) (quoting United States v. Ritchie, 342
17  F.3d 903, 907 (9th Cir. 2003)). "For 'extensively' to mean anything…it should, ordinarily at
18  least, mean more than once." Id. (finding one quotation from a blog post that comprised only a
19  few lines in a footnote of a 67-page complaint was not sufficiently extensive to incorporate the
20  blog post by reference). Here, Plaintiff's complaint quotes two statements purportedly made
21  within the YouTube videos in one footnote of his 36-page complaint. Both statements support
22  Plaintiff's independent allegation that the Products are made with mustard seed sourced from
23  Canada. (See Compl. ¶ 44.) The Court finds the single reference to the YouTube videos in one
24  footnote insufficient to incorporate the videos and every statement made within.

25  However, documents that are never referenced in the complaint or are merely mentioned
26  may still be properly incorporated by reference if they are the subject to which plaintiff's claims
27  are based. See Knievel v. ESPN, 393 F.3d 1068 (9th Cir. 2005) (affirming the incorporation of
28  materials that the complaint did not reference because the claim necessarily depended on them).

Videos may be incorporated by reference when the videos "are central to the claims raised in the complaint." Vinson v. City of Los Angeles, No. CV 14-4488-PLA, 2014 WL 12967582, at *3 (C.D. Cal. Oct. 7, 2014); see, e.g., Brown v. Elec. Arts, Inc., 724 F.3d 1235, 1248 n.7 (9th Cir. 2013) (finding the district court properly incorporated by reference versions of video games not physically attached to a complaint in a case where plaintiff contested the use of his likeness in those same games); Chaverri v. Platinum LED Lights LLC, No. CV-21-01700-PHX-SPL, 2022 WL 204414, at *2 (D. Ariz. Jan. 24, 2022) (incorporating by reference an uncontested YouTube video and webpages made by the defendant that were linked throughout the complaint because "without them, there would be no case.").

Here, there is no indication that Plaintiff would have no case without the two YouTube videos. The YouTube links cited once in one footnote of the complaint are not alleged to form the basis of any of Plaintiff's claims. Rather, the statements allegedly made within the YouTube videos that are specifically quoted in the complaint merely provide support for Plaintiff's independent allegation that Defendant's products contain mustard seed produced in Canada. See Rezentes v. Sears, Roebuck & Co., No. 10-cv-00054 SOM KSC, 2010 WL 1905011, at *6 (D. Haw. May 10, 2010) (declining to consider a video surveillance tape in a motion to dismiss because, although the video was mentioned once in the complaint as supporting plaintiff's claims, the video did "not form the basis" of any claim and thus was deemed "not necessary to establish [plaintiff's] claims"). Although the statements contained within the videos may support Plaintiff's claims, there is no indication that his claims—that Defendant deceptively labels its Products containing foreign components as "Crafted and Bottled in Springfield, MO, USA" and that Plaintiff reasonably relied on that representation when purchasing the Products—necessarily rely on the existence of the YouTube videos.

Plaintiff also requests that this Court look beyond the two quoted statements regarding Defendant's allegedly Canadian-sourced mustard seed and exercise its discretion to incorporate *every* statement made within the YouTube videos. Plaintiff proffers that various other statements establish that Defendant's products do not fall within the allowable thresholds specified in California's safe harbor provisions. (See ECF No. 17 at 17-18.) However, no iteration of the

statements purportedly made within the videos and cited by Plaintiff at the hearing or in his briefing are alleged or described *anywhere* within his complaint.[4] See Knievel, 393 F.3d at 1076 (noting the incorporation by reference doctrine permits courts to take into account documents "whose *contents are alleged* in a complaint…") (quotations and citation omitted) (emphasis added); Tunac v. United States, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) (noting a document is incorporated "when its *contents are described* and the document is 'integral' to the complaint") (quotations and citation omitted) (emphasis added). Plaintiff essentially requests the Court accept a piecemeal complaint: some requisite elements of his claims are pleaded in his 36-page complaint and other requisite elements are provided by statements from third parties in YouTube videos. The Court does not find it appropriate to use a discretionary exception such as the incorporation by reference doctrine to relieve Plaintiff of his pleading requirements.

The final requirement for incorporation by reference is that the parties do not dispute the authenticity of the document. Knievel, 393 F.3d at 1076; see also Coto Settlement, 593 F.3d at 1038 ("We have extended the doctrine of incorporation by reference to consider documents in situations where...the document's authenticity is not in question and there are no disputed issues as to the document's relevance."). "Authenticity for incorporation by reference means the same thing as it does in Federal [R]ule of Evidence 901: whether a document is 'what its proponent claims.'" Ryan v. Salisbury, No. CV 18-00406 ACK-RT, 2019 WL 5269092, at *9 (D. Haw. Oct. 17, 2019) (quoting Davis, 691 F.3d at 1161); see also Kahn v. CJ E & M Am., Inc., No. CV 21-3230-DMG (KSX), 2022 WL 2037495, at *1 (C.D. Cal. Mar. 28, 2022) (considering videos as incorporated by reference "[s]ince no party questions the authenticity of [the videos], and the alleged similarity between them is the basis for [plaintiff]'s claim); FLIR Systems, Inc. v. Sierra Media, Inc., 2011 WL 1832806, at *3 (D. Or. May 10, 2001) (applying the incorporation by reference doctrine to a video located on YouTube to claims relating to the video that the parties created together).

Defendant specifically questions the authenticity of the near-eight minute video from

---

[4] For example, Plaintiff argues in his briefing the videos contain statements regarding the composition of ingredients in the Products broken down by percentages. (ECF No. 17 at 18.) However, Plaintiff makes no allegations relating to percentages of ingredients in his complaint.

third party YouTube user "Worldnite Journey."[5]  (ECF No. 18 at 6.)  Defendant details that the video created by neither party in this action relies on an incorrect measurement standard of the "wholesale value" at issue, does not say the mustard seed used in the Product are foreign, and relates to only one of the three products that Plaintiff allegedly purchased. (Id.) Defendant argues that if Plaintiff has a good faith basis to allege statements consistent with those contained in the YouTube links, he should plead those specific facts consistent with his obligations under Rule 11.  (Id.)  The Court agrees and declines to consider the YouTube videos of unknown origins referenced once in the complaint that are not central to Plaintiff's claims under the incorporation by reference doctrine.  Accordingly, the Court does not consider any arguments predicated on the videos.

**B.  Preemption**

Defendant argues the complaint should be dismissed in its entirety because Plaintiff does not adequately allege that the representation that the Products are "Crafted and Bottled in Springfield, MO, USA" falls outside the safe harbor provisions provided in California's "Made in the U.S.A." statute, which is codified as Business & Professions Code § 17533.7.  In response, Plaintiff raises the novel issue that the percentage-based safe harbor provisions contained within California's Section 17533.7 are expressly preempted by the Federal Trade Commission's ("FTC") "Made in the U.S.A." rule, 16 C.F.R. § 323.

The Federal Trade Commission Act ("FTCA") provides, in pertinent part, that:

> To the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a 'Made in the U.S.A.' or 'Made in America' label, or the equivalent thereof, in order to represent that such product was in whole or substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of this title.

---

[5] Plaintiff noted at the hearing that Defendant stated in its own footnote within its motion to dismiss that the videos are incorporated by reference in the complaint (ECF No. 20, n.6), but then contested the videos' authenticity in its reply (ECF No. 18 at 6-7).  The Court disagrees that Defendant has conceded to the authenticity of the video and/or waived any ability to now contest its authenticity.  However, even if Defendant did not affirmatively contest the video's authenticity, the discretion to incorporate the videos lies with the Court.  See, e.g., Vinson, 2014 WL 12967582, at *2-3 (finding the authenticity of videos was in dispute even though *both* parties assumed the videos "of unknown origins based on a link to YouTube.com" were incorporated by reference and cited them in support of or in opposition to a pending motion to dismiss). Further, as described, undisputed authenticity is only one element of the incorporation by reference doctrine.

15 U.S.C. § 45a. Cloaked with that authority, the FTC adopted the following rule:

> [I]t is an unfair or deceptive act or practice…to label any product as Made in the United States[6] unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and *all or virtually all* ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2 (emphasis added).

California's Section 17533.7 makes it unlawful to sell products as "Made in U.S.A.," or other similar words, if the product or "any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7. In 2015, the California legislature amended Section 17533.7 to also include two statutory safe harbor thresholds that allow "Made in the U.S.A." labeling even if the products contain some foreign-sourced materials.[7] First, a product may be lawfully labeled as "Made in the U.S.A." if no more than five percent of the final wholesale value of the manufactured product is obtained from outside the United States. Cal. Bus. & Prof. Code § 17533.7(b). Alternatively, a product may be lawfully labeled as "Made in the U.S.A." if no more than ten percent of the of the final wholesale value of the manufactured product is obtained from outside the United States *and* the manufacturer shows that it can neither produce the foreign article, unit, or part within the United States nor obtain the foreign article, unit, or part of the merchandise from a domestic source. Cal. Bus. & Prof. Code § 17533.7(c)(1)(A)-(B).

1.  <u>Express Preemption</u>

Plaintiff argues that California's safe harbor provisions within Section 17533.7 are expressly preempted by the FTC's Made in the USA labeling rule. "Express preemption arises

---

[6] The FTC defines the term "Made in the United States" as "any unqualified representation, express or implied, that a product…or a specified component thereof, is of U.S. origin, including, but not limited to, a representation that such product or service is…'crafted' in the United States…." 16 C.F.R. § 323.1(a). At issue here is Defendant's representation that the Products are "Crafted and Bottled in Springfield, MO, USA." (Compl.¶ 8.)

[7] Prior to the 2015 amendment, Section 17533.7 essentially required that a product be entirely made in the United States in order to be labeled as such. See Sen. Judiciary Comm., Bill Analysis of Sen. Bill 633, 2015-2016 Reg. Sess. at *5 (Aug. 13, 2025). Thus, the amendment "took away the right of action against sellers whose products are made in the U.S.A. but comprised of ingredients sourced from outside of the U.S.A., up to a certain threshold." Fitzpatrick v. Tyson Foods, Inc., No. 2:16-cv-00058 JAM EFB, 2016 WL 5395955, at *3 (E.D. Cal. Sept. 27, 2016), aff'd, 714 F. App'x 797 (9th Cir. 2018).

10

1  when the text of a federal statute explicitly manifests Congress's intent to displace state law." Assurance Wireless USA, L.P. v. Reynolds, 100 F.4th 1024, 1031–32 (9th Cir. 2024) (quotations and citations omitted). "Express preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law." Jones v. Google LLC, 73 F.4th 636, 641 (9th Cir. 2023) (citations omitted).

Here, the FTC's preemption clause in its Made in the U.S.A. rule provides that "this part <u>shall not</u> be construed as superseding, altering, or affecting any other State statute…relating to country-of-origin labeling requirements, *except to the extent that such statute…is inconsistent with the provisions of this part, and then only to the extent of the inconsistency.*" 16 C.F.R. 323.5(a) (emphasis added). The Ninth Circuit has read the statutory term "inconsistent" in other preemption clauses that likewise bar inconsistent state laws "to refer to contradictory state law requirements, or to requirements that stand as obstacles to federal objectives." Jones, 73 F.4th at 642 (collecting cases). In such cases, the Ninth Circuit found express preemption was inapplicable "where state law was not inconsistent with the methods of regulating, or treatment of, activities under the federal statute." Id. The Ninth Circuit held that such preemption clauses "did not bar state tort or contract laws imposing obligations similar or identical to the substantive federal requirements." Id.

As an initial matter, the FTC recently confirmed its intent to *not* preempt a state's own Made in the USA labeling statute through either express or field preemption. See 86 Fed. Reg. 37022, at *37030 (July 14, 2021). ("The [FTC] intends to preempt state statutes or regulations that are inconsistent with the Commission's rules only to the extent of the inconsistency. [] When it enacted [15 U.S.C.A. § 45a], *Congress declined to expressly preempt state regulation* or otherwise demonstrate a clear intent for federal law to occupy the field of regulation in question.") (Emphasis added); see also Jones, 73 F.4th 636 (asking for and considering the FTC's views on preemption because the FTC is the principal enforcer of the federal statute).

Plaintiff argues, without specifying exactly how, California's Section 17533.7 safe harbor provisions "patently conflict" with the "broader" yet "more rigorous" federal standard. (ECF

11

1 No. 17 at 16-17.)  The Court is not persuaded that California's safe harbor provisions—which
2 limit any Made in the U.S.A. label to products that contain foreign materials that make up less
3 than 90-95% of a product's wholesale value—are inconsistent with the FTC's "all or virtually
4 all" standard.  Looking at the plain language of the FTC's standard, common sense dictates that
5 the disjunctive standard of "all or virtually all" necessarily means the FTC contemplates that a
6 small amount of foreign content may be present to lawfully label a product as Made in the
7 U.S.A.  It is not impossible for a product to be lawfully labeled as "Made in the U.S.A." under
8 both Section 17533.7 and 16 C.F.R. § 323.2.

9 Looking past the plain language, the FTC has expressly declined to adopt a definition of
10 "all or virtually all" as recently as 2021 because "adding further specificity also increases the risk
11 the rule would chill certain non-deceptive claims."  86 Fed. Reg. 37022, at *37028 (July 14,
12 2021).  Instead, the FTC pointed marketers seeking guidance to its 1997 Enforcement Policy
13 Statement on U.S. Origin Claims, which states that:

> A product that is all or virtually all made in the United States will ordinarily be one in which all significant parts[] and processing that go into the product are of U.S. origin. In other words, where a product is labeled or otherwise advertised with an unqualified "Made in USA" claim, it should contain only a *de minimis, or negligible,* amount of foreign content.

18 62 Fed. Red. 63756, at *63768 (Dec. 2, 1997) (emphasis added).  Plaintiff proffers no support—
19 and the Court independently finds none—that a product containing foreign materials that make
20 up less than 90-95% of a product's wholesale value qualifies as *more* than a "de minimis, or
21 negligible, amount of foreign content."  See id.

22 Further, legislative notes establish that California is aware of the federal "all or virtually
23 all" standard.  When California was amending Section 17533.7 to include its two percentage-
24 based safe harbor provisions in 2015, the authors contemplated the FTC's "more flexible"
25 standard:

> California is the only state in the country that establishes a 100 percent domestic requirement.  All 49 other states and the federal government use the *more flexible* "all or virtually all" standard for determining when a product is eligible to be labeled as "Made in USA."  This standard requires that the significant parts of a final

12

> manufactured product come from domestic sources. But, the standard also allows a product to contain a *negligible* amount of foreign sourced material.

Sen. Judiciary Comm., Bill Analysis of Sen. Bill 633, 2015-2016 Reg. Sess., at 6 (Aug. 13, 2015) (emphasis added). California specifically amended Section 17533.7 to include two percentage-based safe harbors that provide for what California considers a negligible amount of foreign sourced material in a product labeled "Made in the U.S.A."

Likewise, the FTC is aware of California's safe harbor provisions contained within Section 17533.7, as amended. During 2021 rulemaking, the FTC declined to adopt a bright line percentage-based standard like California's 5% safe harbor provision contained within Bus. & Prof. Code § 17533.7(b). 86 Fed. Reg. 37022, at *37026. Although the commission declined to adopt a percentage-based standard, it did so because it found its " 'all or virtually all' standard *is better tailored* to prevent unqualified U.S.-origin claims that will mislead consumers in making purchasing decisions." Id. (emphasis added). The FTC did not suggest California's Section 17533.7 was, in every instance, *inconsistent* with the "all or virtually all" standard.

During the 2021 rulemaking, the FTC also declined to amend the rule to support excluding foreign content unavailable in the United States from the "all or virtually all analysis," while expressly citing California's second safe harbor provision that permits up to 10% of the final wholesale value to be attributable to imported content if that content cannot be made or obtained in the United States. 86 Fed. Reg. 37022, at *37025-27, n.45 (citing Bus. & Prof. Code § 17533.7(c)(1)(A)-(B)). In declining to adopt a similar threshold, the FTC note that "*the flexibility inherent in the 'all or virtually all' analysis* accounts for the possibility a marketer could substantiate an unqualified claim for a product containing nonindigenous raw materials if the manufacturer has evidence demonstrating the specific claim in context does not deceive consumers." Id. at 37027 (emphasis added).[8] Thus, contrary to Plaintiff's argument that the

---

[8] At the hearing, Plaintiff hung his hat on the FTC's watch case study cited in the FTC's discussion as an example that California's safe harbor provisions are inconsistent with the federal standard. The Court disagrees. There, the FTC explained that its enforcement experience "has established unqualified U.S.-origin claims for watches that incorporate imported movements may mislead consumers because, although the cost of an imported movement is often low relative to the overall cost to manufacture a watch, consumers may place a premium on the origin and quality of a watch movement and consider the failure to disclose the foreign origin of this component to be material to their purchasing decision. Under those circumstances, the foreign movement likely is not a de minimis

federal "all or virtually all" standard is a "more rigorous" standard than California's percentage-based thresholds (ECF No. 17 at 14), the FTC stated in 1997 and confirmed in 2021 that the federal standard "intentionally incorporates flexibility" and the FTC itself follows a "flexible approach" in enforcement. 86 Fed. Reg. 37022, at *37028.

At the June 25, 2025 hearing, Plaintiff intimated that the inconsistency lies between the FTC's requirement that "all or virtually all ingredients…are *made and sourced* in the United States" and California's safe harbor provisions requiring that a foreign ingredient does not make up more than 5-10% of product's "*final wholesale value*." Compare 16 C.F.R. § 323.2 with Bus. & Prof. Code § 17533.7(b)-(c). However, the final wholesale value of the product in proportion with the foreign ingredient is one of the factors defining the federal "all or virtually all" standard, as noted in the 1997 Enforcement Policy Statement and expanded upon during 2021 rulemaking:

> Although there is no single "bright line" to establish when a product is or is not "all or virtually all" made in the United States, there are a number of factors to consider in making this determination. First, in order for a product to be considered "all or virtually all" made in the United States, the final assembly or processing of the product must take place in the United States. <u>Beyond this minimum threshold, the Commission will consider other factors</u>, *including but not limited to the portion of the product's total manufacturing costs attributable to U.S. parts and processing*; how far removed from the finished product any foreign content is; and the importance of the foreign content to the form or function of the product.

86 Fed. Reg. 37022, at *37028; see also 62 Fed. Red. 63756, at *63768. The Court does not find California's safe harbor provisions that use the "final wholesale value" metric to be inconsistent with the flexible federal standard given it is one of the very factors used by the FTC in its own determination of whether a product meets the "all or virtually all standard."

---

consideration for consumers, and an unqualified U.S.-origin claim for a watch containing an imported movement would likely deceive consumers." 86 Fed. Reg. 37022, at *37026. Similar to the lack of factual material alleged by Plaintiff here, the case study did not provide the specific percentage of the wholesale watch movement in relation to the final wholesale value of the watch. Thus, it is unclear if the value of the watch movement would have fallen within the 5-10% thresholds provided by California's safe harbor provisions. However, if the cost of the watch movement was "low relative to the overall cost to manufacture a watch" while either (1) costing more than 5% of the final wholesale cost of the watch, or (2) it could not be made domestically and costing more than 10% of the final wholesale value of the watch, *neither* safe harbor provision would be triggered, and the plaintiff would plead such in his complaint. The Court is not persuaded that a nonspecific FTC case study establishes California's *de minimus* 5-10% thresholds are inconsistent with the "all or virtually all" federal standard.

1    Given this context and the long line of Ninth Circuit cases holding that "state laws that
2 supplement, or require the same thing as federal law, do not stand as an obstacle to Congress's
3 objectives and so are not inconsistent," Jones, 73 F.4th at 642 (citations and quotations omitted),
4 the Court finds express preemption does not generally apply to California's Section 17533.7 safe
5 harbor provisions.

6        2.    Conflict Preemption

7    "Conflict preemption arises when state law conflicts with federal law, such that 'it is
8 impossible for a private party to comply with both state and federal law.' " Assurance Wireless
9 USA, 100 F.4th at 1032 (quoting Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta,
10 33 F.4th 1107, 1114 (9th Cir. 2022)); see also Metrophones Telecomms., Inc. v. Glob. Crossing
11 Telecomms, Inc., 423 F.3d 1056, 1072 (9th Cir. 2005), aff'd, 550 U.S. 45, 127 S. Ct. 1513 (2007)
12 (noting the Supreme Court has recognized "conflict pre-emption [is] where compliance with both
13 federal and state regulations is a physical impossibility, or where state law stands as an obstacle
14 to the accomplishment and execution of the full purposes and objectives of Congress.")

15    "Although express and conflict preemption are analytically distinct inquiries, they
16 effectively collapse into one when the preemption clause," like the one here, uses the term
17 "inconsistent." Jones, 73 F.4th at 644 (quoting Metrophones, 423 F.3d at 1073). "Under either
18 approach, the question is 'whether state law stands as an obstacle to the accomplishment and
19 execution of the full purposes and objectives of Congress' or the regulatory agency with
20 rulemaking authority." Id. (quoting Metrophones, 423 F.3d at 1073). Accordingly, for the same
21 reasons the Court finds California's Section 17533.7 safe harbor provisions are not expressly
22 preempted by the flexible federal "all or virtually all" standard, the Court finds they are not
23 conflict preempted.

24    **C.   Plaintiff Fails to Plead Any Facts Showing His Claims Are Not Barred by the
25        Safe Harbor Provisions**

26    District courts have applied Section 17533.7's safe harbor provisions to claims under the
27 CLRA, UCL, FAL, and other state law causes of action where the alleged violations are
28 predicated upon conduct that is lawful under such provisions. See, e.g., Flodin v. Cent. Garden

15

& Pet Co., No. 21-CV-01631-JST, 2023 WL 3607278, at *2 (N.D. Cal. Mar. 9, 2023).  Where a plaintiff fails to plausibly allege that either percentage-based safe harbor threshold of Section 17533.7 was exceeded in a product that was otherwise labeled as "Made in the U.S.A.," such claims cannot succeed.  See, e.g., id. ("Because Plaintiffs have failed plausibly to allege that the 5% safe-harbor limit of Section 17533.7 was exceeded, it follows that no state law claim will lie to the extent it arises out of the same conduct") (quotations and citations omitted); Hood v. Handi-Foil Corp., No. 24-CV-02373-RS, 2024 WL 4008711, at *3 (N.D. Cal. Aug. 29, 2024) ("To advance [the plaintiff's CLRA, UCL, FAL, breach of express and implied warranties, and unjust enrichment] claims, [the plaintiff] must plead with particularity facts giving rise to liability on the part of Defendants consistent with Section 17533.7.").

Plaintiff argues that his complaint sufficiently alleges facts to plausibly show that a substantial portion of Defendant's mustard Products, which all contain foreign sourced mustard seed from Canada and, in some cases, foreign sourced turmeric, contain foreign ingredients that make up more than 10% of the final wholesale value of the Products. (ECF No. 17 at 17.)  The Court disagrees.  Although Plaintiff alleges the Products contain mustard seed from Canada and, at times, foreign-sourced turmeric (Compl. ¶¶ 44-45), he fails to make *any* allegations related to the composition of each Product, including whether the amount of mustard seed and/or turmeric contained in the Products make up more than 90% (if unable to be produced domestically) or 95% of each Product's final wholesale value.[9]

Plaintiff instead argues such allegations can be implied from the ingredient lists contained in the photographs of the mustard bottles provided in his complaint (Compl. at ¶ 39) because "[o]n a product label, the ingredients are listed in descending order of predominance by weight, with the ingredients used in the greatest amount first, followed by those in smaller amounts." (ECF No. 17 at 18 (citing U.S. FOOD & DRUG ADMINISTRATION, Types of Food Ingredients, available at https://www.fda.gov/food/food-additives-and-gras-ingredients-

---

[9] When asked at the hearing for specific citations to allegations that support his claims, Plaintiff directed the Court to various statements *not* detailed in the complaint but made by a third party in a YouTube video of unknown origin to show he has plausibly alleged that a percentage of the Products' ingredients are sourced outside the United States. As previously discussed, the Court declines to consider the videos and any arguments predicated upon those videos.

16

1 information-consumers/types-foodingredients).)  Notably, the list of ingredients is itemized by
2 greatest weight, *not* the ingredient's final wholesale value in proportion to the final Product.
3 Thus, the fact that mustard seed is third in the ingredient listed on the Products' labels does not
4 support *any* conclusion that mustard seed amounts to a particular percentage of the product,
5 nonetheless any particular percentage of each Products' final wholesale value.  See Flodin, 2023
6 WL 3607278, at *2 ("the Court cannot reasonably infer that [the Product] consists of greater than
7 five percent avocado by weight, much less by value. [Citation omitted]. Nothing about this
8 ingredient order compels (or even supports) the conclusion that a particular ingredient constitutes
9 any specific percentage of the product – by value, weight, or any other metric.)  Given the
10 Products' ingredient lists contain six or more ingredients, it is plausible, absent allegations to the
11 contrary, that the non-mustard seed and non-turmeric ingredients comprise less than 90-95%
12 percent of each Product's final wholesale value.

13 Plaintiff's complaint completely fails to plausibly allege that Section 17533.7's safe
14 harbor thresholds do not apply under Rule 8 pleading standards, nonetheless Rule 9 pleading
15 standards, where required.  Accordingly, the Court shall recommend that Defendant's motion to
16 dismiss be granted.

17 **D.     Leave to Amend**

18 Courts freely grant leave to amend a complaint which has been dismissed.  See Fed. R.
19 Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Schreiber
20 Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is
21 dismissed for failure to state a claim, leave to amend should be granted unless the court
22 determines that the allegation of other facts consistent with the challenged pleading could not
23 possibly cure the deficiency."); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (same).
24 Leave to amend generally shall be denied only if amendment would unduly prejudice the
25 opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith.
26 Leadsinger, Inc. v. BMG Music Publishing, 512 F.3d 522, 532 (9th Cir. 2008).

27 Plaintiff requests he be given leave of amend to include allegations to support the
28 inapplicability of the California safe harbor provisions. (ECF No. 17 at 19-20.) Specifically,

Plaintiff proffers he can allege that the 10% safe harbor provision is inapplicable because both mustard seed and turmeric are crops that are grown within the United States, but in this case are sourced outside the United States. (ECF No. 17 at 19-20.) Plaintiff also proffers he can amend his complaint to included additional allegations concerning the wholesale cost of mustard seed imported from Canada in comparison to the average and relatively low wholesale cost of water and vinegar. (Id. at 19.)

Defendant argues the Court should not grant leave to amend because Plaintiff refused to amend the complaint even after the parties' meet and confer efforts. The Court will not sanction Plaintiff for complying with the Court's meet and confer requirement in the Standing Order (ECF No. 4-1 at 2) while simply disagreeing with Defendant's position during such efforts. The Court finds Plaintiff has not acted in bad faith or with dilatory motive, and it would not prejudice Defendants or be futile to grant an opportunity to amend the FAC to allege additional factual allegations. The Court therefore recommends granting Plaintiff leave to amend to cure the deficiencies identified in these findings and recommendations.

## IV.

## ORDER AND RECOMMENDATION

Accordingly, IT IS HEREBY ORDERED that the Court's June 11, 2025 order to show cause (ECF No. 19) is DISCHARGED.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss (ECF No. 10) be GRANTED with leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th

Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 11, 2025**

STANLEY A. BOONE
United States Magistrate Judge