**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARRNELL MCCOY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MCCORMICK & COMPANY, INC.,<br><br>　　　　　Defendant. | Case No. 1:25-cv-00231 JLT SAB<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS<br><br>(Docs. 10, 27, 28, 29) |

　　　Darnnell McCoy brings this putative class action under various California consumer and common laws, alleging the label "Crafted and Bottled in Springfield, MO, USA," appearing at times with "American flavor in a bottle," on Defendant McCormick & Company, Inc.'s packaging for French's mustard products is misleading because such products contain foreign-made components. (Doc. 1.) Defendant moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 10.) The matter was referred to the assigned magistrate judge. (Doc. 11.)

　　　On July 11, 2025, the magistrate judge issued Findings and Recommendations recommending that Defendant's motion to dismiss be granted. (Doc. 27.) Specifically, the magistrate judge: (1) declined to incorporate by reference every statement contained within two YouTube video links provided in a footnote to Plaintiff's complaint (*id.* at 5-9); found the safe harbor provisions contained within California's "Made in the U.S.A." statutory scheme are not preempted by federal law (*id.* at 9–15); determined Plaintiff failed to plausibly plead that his claims are not barred by those safe harbor

provisions (*id.* at 15–17); and recommended that Defendants' motion be granted with leave to amend.[1] (*Id.* at 17–18.) On July 25, 2025, Plaintiff timely filed objections to the magistrate judge's findings. (Doc. 28.) On August 8, 2025, Defendant filed a response. (Doc 29.)

According to 28 U.S.C. § 636(b)(1)(C), this Court performed a *de novo* review of this case. Plaintiff only objects to the magistrate judge's conflict preemption analysis. (*See generally* Doc. 28 (mentioning only "conflict" not "express" preemption or any other issue).) As to all issues about which there has been no objection, the Court concludes the Findings and Recommendations are supported by the record and proper analysis.

As to conflict preemption, the Findings and Recommendations accurately articulate the general standard:

> "Conflict preemption arises when state law conflicts with federal law, such that 'it is impossible for a private party to comply with both state and federal law.'" [*Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1032 (9th Cir. 2024)] (quoting *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1114 (9th Cir. 2022)); *see also Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms, Inc.*, 423 F.3d 1056, 1072 (9th Cir. 2005), *aff'd*, 550 U.S. 45 (2007) (noting the Supreme Court has recognized "conflict pre-emption [is] where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.")

(Doc. 27 at 15.) In addition, the Findings and Recommendations review the preemption language in the Federal Trade Commission's (FTC) regulations:

> [T]he FTC's preemption clause in its Made in the U.S.A. rule provides that "this part shall not be construed as superseding, altering, or affecting any other State statute…relating to country-of-origin labeling requirements, *except to the extent that such statute…is inconsistent* with the provisions of this part, and then only to the extent of the inconsistency." 16 C.F.R. 323.5(a) (emphasis added). The Ninth Circuit has read the statutory term "inconsistent" in other preemption clauses that likewise bar inconsistent state laws "to refer to contradictory state law requirements, or to requirements that stand as obstacles to federal objectives." [*Jones v. Google LLC*, 73 F.4th 636, 642 (9th Cir. 2023)](collecting cases). In such cases, the Ninth Circuit found express preemption was inapplicable "where state law was not inconsistent with the methods of regulating, or treatment of, activities under the federal statute." *Id*. The Ninth Circuit held that such preemption clauses "did not bar state tort or contract laws imposing obligations similar or identical to the substantive federal requirements.

(Doc. 27 at 11.)

---

[1] Defendant makes six alternative arguments in favor of dismissal of Plaintiff's complaint. Because the magistrate judge determined Plaintiff's complaint fails to allege any facts showing his claims are not barred by California's safe harbor provisions, the magistrate judge did not address Defendant's alternative arguments. (Doc. 27 at 5 n.3.)

Plaintiff argues that a conflict exists between the FTC's "all or virtually all" standard[2] and the percentage-based "final wholesale value of the foreign ingredients" standard set forth in California's safe harbor provision.[3] According to Plaintiff, an inconsistency arises because the federal standard takes into account "the amount of foreign ingredients in the products and their importance to consumers," while California's scheme "look[s] at the final wholesale value of the foreign ingredients and whether such ingredients can be obtained domestically." (Doc. 28 at 3.) Plaintiff's argument continues as follows:

> The FTC unequivocally stated in its 2021 final rule in rejecting to adopt a bright-line, percentage-based standard, that such "percentage-based, bright-line rules could allow <u>deceptive unqualified claims</u> in circumstances where <u>the low cost of the foreign input</u> does not correlate to the <u>importance of that input to consumers</u>." *See* 86 Fed. Reg. 37022, 37026 (July 14, 2021) (emphasis added). In support of this stated concern, the FTC provided an example of such a circumstance in the context of "watches that incorporate imported movements" noting that if labeled as Made in the USA without qualification, consumers may be misled "because, although the cost of an imported movement is often low relative to the overall cost to manufacture a watch, consumers may place a premium on the origin and quality of a watch movement and consider the failure to disclose the foreign origin of this component to be material to their purchasing decision." *See id*. "Under those circumstances, the foreign movement likely is not a de minimis consideration for consumers, and an unqualified U.S.-origin claim for a watch containing an imported movement would likely deceive consumers." *Id*. "The Policy Statement has

---

[2] As the Findings and Recommendations explain, the Federal Trade Commission Act ("FTCA") provides, in pertinent part, that:

> To the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a 'Made in the U.S.A.' or 'Made in America' label, or the equivalent thereof, in order to represent that such product was in whole or substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of this title.

15 U.S.C. § 45a. The FTC adopted the following rule implementing § 45a:

> [I]t is an unfair or deceptive act or practice . . . to label any product as Made in the United States unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and *all or virtually* all ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2 (emphasis added).

[3] California's Section 17533.7 makes it unlawful to sell products as "Made in U.S.A.," or other similar words, if the product or "any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7. California's statute contains two safe harbor provisions that allow "Made in the U.S.A." labeling even if the products contain some foreign-sourced materials. First, a product may be lawfully labeled as "Made in the U.S.A." if no more than five percent of the final wholesale value of the manufactured product is obtained from outside the United States. Cal. Bus. & Prof. Code § 17533.7(b). Alternatively, a product may be lawfully labeled as "Made in the U.S.A." if no more than ten percent of the of the final wholesale value of the manufactured product is obtained from outside the United States and the manufacturer shows that it can neither produce the foreign article, unit, or part within the United States nor obtain the foreign article, unit, or part of the merchandise from a domestic source. Cal. Bus. & Prof. Code § 17533.7(c)(1)(A)-(B).

instructed marketers since the 1990s that the cost of foreign versus U.S. parts and labor is only one factor to consider in determining how material a part may be to consumers." *Id.* (emphasis added); see also, 62 Fed. Reg. 63756, 63765, n. 93 (Dec. 2, 1997) (noting "it may be preferable to look more generally at the significance of the foreign inputs rather than evaluate their extent entirely in terms of cost.").

In other words, the FTC acknowledges that there are scenarios where consumers place importance on a component or ingredient in a product that is not sourced domestically but has a low cost compared to the rest of the ingredients and components. In that case, under the federal Made in USA Labeling Rule's "all or virtually all" standard, the product could not be legally labeled as Made in the USA. However, the California Safe Harbors do not account for this concern, and actually serve to <u>undermine the FTC's goal of preventing consumer deception</u> by allowing ingredients or components that, although may be material to consumers, to be sourced outside the U.S. so long as those foreign ingredients do not make up more than 5%-10% of the final wholesale value of the manufactured product.

The F&R's reasoning that simply because both statutes allow for some amount of foreign ingredients that there is no inconsistency is misplaced. The FTC is undoubtably concerned about Made in the USA representations where there are low-cost foreign ingredients, material to the final product, that are not disclosed to consumers. Yet, the California Safe Harbors allow the precise conduct the FTC is trying to prevent. The F&R erroneously rejected the FTC's watch study (cited by Plaintiff's counsel at oral argument, *see* **Exhibit A** to Prescott Decl., at 14:11-25; 15:1-8) as an example of the inconstancy between the California and federal law. *See* F&R, Dkt. No. 27, at p. 13, n. 8.

Additionally, the FTC emphasized that "consumer perception testing has consistently shown consumers expect products labeled as MUSA to contain no more than a de minimis amount of foreign content," regardless of whether the "foreign content unavailable in the United States." 86 Fed. Reg. 37022, 37026 (July 14, 2021). "There is no evidence this takeaway varies in scenarios where some parts or inputs are not available in the United States." *Id.* The example provided by the FTC is where the foreign ingredient or component "constitutes the whole or essence of the finished product." *Id.* For instance, the "rubber in a rubber ball or the coffee beans in ground coffee" (*id.* at 37026–27)–or in this case the mustard seeds in French's mustard

(Doc. 28 at 4–5.) This argument relies on a false premise—that the percentage-based bright line rules codified into California's safe harbor provision fail to capture the concern the FTC (and by extension Plaintiff) highlights, namely circumstances where the low <u>cost</u> of the foreign input does not correlate to the importance of that input to consumers. The Court does not read the safe harbor provision so narrowly. Under California's scheme, a product may be lawfully labeled as "Made in the U.S.A." if no more than five percent of the final <u>wholesale value</u> of the manufactured product is obtained from outside the United States. Cal. Bus. & Prof. Code § 17533.7(b). Alternatively, a product may be lawfully labeled as "Made in the U.S.A." if no more than ten percent of the of the final <u>wholesale value</u> of the manufactured product is obtained from outside the United States and the manufacturer shows that it can neither produce the foreign article, unit, or part within the United States nor obtain the

foreign article, unit, or part of the merchandise from a domestic source. Cal. Bus. & Prof. Code § 17533.7(c)(1)(A)-(B). By focusing on "value" instead of "cost"[4] the California safe harbor provision allows for consideration of how important a consumer might perceive the foreign input (e.g., the imported watch "movement" offered as an example by the FTC) is to the overall value of the product. Thus, the Court agrees with the magistrate judge (*see* Doc. 27 at 13–14 n. 8) that the FTC's watch case example does not establish that California's 5–10% safe harbor thresholds are inconsistent with the federal "all or virtually all" federal standard.

Plaintiff also suggests that the Findings and Recommendations erred by "reasoning that simply because both statutes allow for some amount of foreign ingredients [] there is no inconsistency." (Doc. 28 at 5.) This too is a false premise. The logic of the Findings and Recommendations is more nuanced. (*E.g.*, Doc. 27 at 12 ("Looking at the plain language of the FTC's standard, common sense dictates that the disjunctive standard of 'all or virtually all' necessarily means the FTC contemplates that a small amount of foreign content may be present to lawfully label a product as Made in the U.S.A. It is not impossible for a product to be lawfully labeled as 'Made in the U.S.A.' under both Section 17533.7 and 16 C.F.R. § 323.2.").) The Court agrees with the magistrate judge's reasoning on this point as well.

Finally, Plaintiff reiterates a related argument about California's 10% wholesale value safe harbor threshold, which applies when "no more than ten percent of the of the final wholesale value of the manufactured product is obtained from outside the United States and the manufacturer shows that it can neither produce the foreign article, unit, or part within the United States nor obtain the foreign

---

[4] As Plaintiff concedes, the FTC's primary concern in rejecting a bright line rule is the possible circumstance in which the low cost of the foreign input does not correlate to the importance of that input to consumers." *See* 86 Fed. Reg. 37022, 37026 (July 14, 2021) "Value" is not identical to "cost." Value means "monetary or material worth, as in commerce or trade." Dictionary.com, "Value", (last visited Aug. 9. 2025.) "Cost" is instead "the price paid to acquire, produce, accomplish, or maintain anything." Dictionary.com, "Cost", (last visited Aug. 9. 2025.) Because the Court finds the term "value" to be materially distinct from the term "cost", the Court does not adopt the magistrate judge's reasoning insofar as the Findings and Recommendations equate California's use of the term "wholesale value" with the FTC's use of the term costs. (*See* Doc. 27 at 14 (reasoning that "the final wholesale value of the product in proportion with the foreign ingredient is one of the factors defining the federal 'all or virtually all' standard" because the FTC's 2021 Rulemaking indicated the FTC "will consider other factors including but not limited to the products total manufacturing costs attributable to U.S. parts and processing")); *but see* 86 Fed. Reg. 37,022, 37,025 n. 45 (FTC seeming to use the terms value and cost interchangeably by describing California's law as permitting "up to 10% (instead of 5%) of costs to be attributable to imported content if that content cannot be made or obtained in the USA for reasons other than cost"). Nonetheless, the ultimate outcome remains unchanged. Because the Court construes the term "value" in California's safe harbor provision to allow for consideration of consumer preferences in a manner consistent with the FTC's standard, the two statutory schemes are not inconsistent.

article, unit, or part of the merchandise from a domestic source." Cal. Bus. & Prof. Code § 17533.7(c)(1)(A)-(B). Plaintiff maintains that this provision is inherently inconsistent with the FTC's "all or virtually all" provision, again pointing to the FTC's reasoning in its 2021 rulemaking. (Doc. 28 at 5.) Plaintiffs emphasize that in rejecting adoption of a bright-line rule, the FTC reasoned:

> The record similarly does not support excluding foreign content unavailable in the United States from the "all or virtually all" analysis. Specifically...consumer perception testing has consistently shown consumers expect products labeled as MUSA to contain no more than a *de minimis* amount of foreign content. There is no evidence this takeaway varies in scenarios where some parts or inputs are not available in the United States. Indeed, the Policy Statement explains unqualified claims for such products could be deceptive, for example, "if the [nonindigenous] imported material constitutes the whole or essence of the finished product (e.g., the rubber in a rubber ball or the coffee beans in ground coffee)."

86 Fed. Reg 37,022-01, 37,026–07 (footnotes omitted). Plaintiff maintains that in this case the FTC would consider the mustard seed in French's mustard an ingredient that consumers would place importance on as it is the "essence" of the finished product: mustard. (Doc. 27 at 5–6.) Yet, this still does not mean California's safe harbor provision is inconsistent with the federal standard. If a consumer would consider the source of that essential ingredient to be important, that preference would impact the proportion the essential ingredient contributed to the wholesale value of the product under California law.[5]

In sum, though the Court departs from the magistrate judge's reasoning in one minor respect, *see supra* note 4, the Court does not find Plaintiff's objections persuasive. *See also Corona v. It's a New 10, LLC*, No. 25CV377-GPC(BLM), 2025 WL 2173961, at *7 (S.D. Cal. July 31, 2025) (reaching similar conclusions). Thus, the Court ORDERS:

1. The Findings and Recommendations dated July 11, 2025 (Doc. 27) are **ADOPTED in full**.
2. Defendant's motion to dismiss (Doc. 10) is **GRANTED**.
3. Plaintiff's complaint is **DISMISSED** with leave to amend.

---

[5] Plaintiff makes a final objection that California's final wholesale value standard is "demonstratively more lenient than the federal one "particularly for large manufactures such as Defendant, due to the subjective nature of 'wholesale value', which is influenced by a manufacturer's purchasing power. This allows for larger manufactures to buy foreign ingredients in bulk, at a reduced cost, yielding a smaller wholesale value of the foreign input, compared to smaller manufactures with less purchasing power." (Doc. 27 at 6.) The Court's interpretation of the California provision obviates this argument as well, because California's law focuses on "value" not "cost."

4. Plaintiff **SHALL** file any first amended complaint within 21 days of the date of service of this order.

**Plaintiff is advised that failure to file a first amended complaint will result in dismissal of this action for failure to prosecute and failure to obey the Court's order.**

IT IS SO ORDERED.

Dated: __August 12, 2025__         /s/ Jennifer L. Thurston
                                   UNITED STATES DISTRICT JUDGE

7