1

2

3

4

5

6

7 # UNITED STATES DISTRICT COURT

8 ### EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| DARRNELL MCCOY, | Case No. 1:25-cv-00231-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | |
| MCCORMICK & COMPANY, INC., | |
| Defendant. | (ECF Nos. 36, 39) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

10

11

12

13

14

15

16     Plaintiff Darnnell McCoy ("Plaintiff") brings this putative class action under various

17 California consumer protection statutes as well as common law claims, alleging the label

18 "Crafted and Bottled in Springfield, MO, USA," appearing with "American flavor in a bottle,"

19 on Defendant McCormick & Company, Inc.'s ("Defendant") packaging for French's mustard

20 products is misleading because such products contain foreign-sourced components.  (ECF No.

21 31.)  Currently before the Court is Defendant's second motion to dismiss Plaintiff's operative

22 complaint for failure to state a claim pursuant to Rule 12(b)(6)[1] of the Federal Rules of Civil

23 Procedure.  (ECF Nos. 36, 39.)[2]  The Court held a hearing on December 17, 2025.  (ECF No.

24 42.)  Pamela Prescott, Esq., appeared on behalf of Plaintiff and Amit Rana, Esq., appeared on

25

26 ――――――――――――

[1] Defendant ostensibly also moves under Rule 12(b)(1) where it attacks standing and lack of subject-matter jurisdiction.

27

28 [2] Defendant moved to dismiss on September 30, 2025, (ECF No. 36), and on October 6, 2025, Defendant filed an amended motion to dismiss, which is the instant motion.  (ECF No. 39.)

behalf of Defendant.  Having considered the briefing, the record, and the arguments presented at the December 17, 2025 hearing, the Court will recommend that Defendant's motion to dismiss be granted in part and denied in part.

**I.**

**BACKGROUND**

Defendant owns, produces, manufactures, and sells products under numerous brands throughout the United States, including French's.  (ECF No. 31, ¶¶ 17, 20.)  On April 11, 2023, Plaintiff searched Walmart's mobile application from his smart phone looking to purchase various food products while physically present in his then-residence in Manteca, California.  (Id. at ¶ 100.)  Plaintiff saw French's Dijon Mustard advertised for sale, with viewable pictures of the front and the back of the product.  (Id. at ¶ 101.)  At the time of purchase, the product's packaging informed Plaintiff that it was "Crafted and Bottled in Springfield, MO, USA."  (Id. at ¶ 102.)  Additionally, the principal display panel on the front of the bottle stated, "AMERICAN FLAVOR IN A BOTTLE."  (Id. at ¶ 103; see also id. at ¶¶ 40-45.)  Relying on these representations and desiring to purchase a product that was made in the United States with ingredients from the United States, Plaintiff purchased French's Dijon Mustard for $3.42.  (Id. at ¶ 105.)

Plaintiff generally alleges he has previously purchased other French's products, including French's Honey Dijon Mustard and French's Yellow Mustard, both of which also represent they are "Crafted and Bottled in Springfield, MO, USA."  (Id. at ¶¶ 106-07.)  Additionally, some bottles, depending on the size, state "AMERICAN FLAVOR IN A BOTTLE" on the front of the bottle.  (Id.)  Plaintiff alleges he understood these representations to mean that French's Dijon Mustard Made with Chardonnay, Honey Dijon Mustard and Yellow Mustard Products (collectively, the "Products") were made in the United States with ingredients sourced domestically.  (Id. at ¶¶ 108-09; see id. ¶¶ 7, 26.)  Plaintiff alleges he relied upon those representations when purchasing the Products.  (Id. at ¶ 109.)

However, each of the Products Plaintiff purchased were allegedly made with and/or contained components that were sourced, grown, or made outside of the United States.  (Id. ¶¶

1   22, 23, 110.)  Plaintiff specifically alleges that the primary substantive ingredient of the Products
2   is mustard seed, which is sourced primarily, if not exclusively, from Canada.  (Id. at ¶ 50.)
3   Plaintiff also alleges that some varieties of Defendant's products, including French's Yellow
4   Mustard, contain turmeric, another imported ingredient.  (Id. at ¶¶ 6, 28, 67.)

5       Plaintiff alleges that he was deceived into purchasing the product based on the
6   unqualified United States origin representations on the Products' packaging and believes that the
7   Products containing foreign ingredients are not worth the purchase price paid.  (Id. at ¶¶ 119,
8   199, 201.)  Plaintiff alleges that had he been made aware that the Products were not actually
9   "Crafted and Bottled in Springfield, MO, USA," he would not have purchased the Products.  (Id.
10  at ¶ 30, 115.)

11      Plaintiff brings claims under the following causes of action: 1) California's Consumers
12  Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; 2) California's Unfair
13  Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; 3) California's False
14  Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; 4) breach of express
15  warranty; 5) unjust enrichment; 6) negligent misrepresentation; and 7) intentional
16  misrepresentation.  Plaintiff prays for certification of a class action, declaratory relief,
17  disgorgement, injunctive relief, damages, and reasonable attorney's costs and fees.  (ECF No. 31,
18  pp. 52-54.)

19      On April 4, 2025, Defendant moved to dismiss Plaintiff's original complaint, and on July
20  11, 2025, the Court issued findings and recommendations recommending that the District Judge
21  grant the motion.  (ECF Nos. 10, 27.)  Specifically, the Court found that Plaintiff's claims were
22  not preempted but that Plaintiff failed to plausibly allege that Section 17533.7's safe harbor
23  thresholds did not apply under Rule 8 or Rule 9 pleading standards and that Plaintiff had failed to
24  allege either percentage-based safe-harbor threshold of Section 17533.7 was exceeded in a
25  product.  (ECF No. 27, pp. 15-17.)  On August 12, 2025, the District Judge adopted the findings
26  and recommendations with one notable exception.  (ECF No. 30.)  Namely, the District Judge
27  found that the term "value" to be materially distinct from the term "cost", and "the Court does
28  not adopt the magistrate judge's reasoning insofar as the Findings and Recommendations equate

1  California's use of the term 'wholesale value' with the FTC's use of the term costs." (<u>Id.</u> at p. 5

2  n.4.)  Moreover, the District Judge discussed that "[b]ecause the Court construes the term 'value'

3  in California's safe harbor provision to allow for consideration of consumer preferences in a

4  manner consistent with the FTC's standard, the two statutory schemes are not inconsistent."

5  (<u>Id.</u>)  Yet, the District Judge held that with this understanding, "the ultimate outcome remain[ed]

6  unchanged." (<u>Id.</u>)  The Court gave Plaintiff leave to amend, and on September 2, 2025, Plaintiff

7  filed his first amended complaint—the operative complaint. (ECF No. 31.)  On September 30,

8  2025, Defendant filed the instant motion to dismiss, which the District Judge referred to the

9  undersigned for the preparation of findings and recommendations. (ECF Nos. 36, 38.)  The

10  motion has been fully briefed, and the Court held a hearing on December 17, 2025. (ECF Nos.

11  40, 41, 42.)

**II.**

**LEGAL STANDARDS**

14  Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

15  statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to

16  meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  To

17  overcome a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter,

18  accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Ashcroft v. Iqbal</u>, 556

19  U.S. 662, 678 (2009), quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim

20  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

21  reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  "Plausibility

22  requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the

23  elements of a cause of action, and must rise above the mere conceivability or possibility of

24  unlawful conduct that entitles the pleader to relief." <u>Somers v. Apple, Inc.</u>, 729 F.3d 953, 959-60

25  (9th Cir. 2013) (cleaned up).  "Factual allegations must be enough to raise a right to relief above

26  the speculative level." <u>Twombly</u>, 550 U.S. at 555.

27  In ruling on a Rule 12(b)(6) motion, the court "accept[s] all factual allegations in the

28  complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

1    party." <u>Rowe v. Educ. Credit Mgmt. Corp.</u>, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation
2    omitted).  But "allegations that are merely conclusory, unwarranted deductions of fact, or
3    unreasonable inferences" need not be accepted.  <u>In re Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049,
4    1055 (9th Cir. 2008) (citation omitted).  "Dismissal is appropriate when the complaint lacks a
5    cognizable legal theory or sufficient factual allegations to support a cognizable legal theory."
6    <u>Saloojas, Inc. v. Aetna Health of Cal., Inc.</u>, 80 F.4th 1011, 1014 (9th Cir. 2023) (cleaned up).

7          In alleging a claim grounded in fraud, "a party must state with particularity the
8    circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  A court may dismiss a claim for
9    failing to satisfy the heightened pleading requirements of Rule 9(b).  <u>Vess v. Ciba-Geigy Corp.</u>
10   <u>USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003).  Under this heightened pleading standard, a party
11   must "identify the who, what, when, where, and how of the misconduct charged, as well as what
12   is false or misleading about the purportedly fraudulent statement, and why it is false."  <u>Moore v.</u>
13   <u>Mars Petcare US, Inc.</u>, 966 F.3d 1007, 1019 (9th Cir. 2020), quoting <u>Davidson v. Kimberly-</u>
14   <u>Clark</u>, 889 F.3d 956, 964 (9th Cir. 2018).  "[C]laims based on an omission can succeed without
15   the same level of specificity required by a normal fraud claim."  <u>Miller v. Ford Motor Co.</u>, No.
16   2:20-cv-01796-TLN-CKD, 620 F. Supp. 3d 1045, 1068 (E.D. Cal. Aug. 10, 2022) (citation and
17   quotations omitted).

18                                              **III.**

19                                        **DISCUSSION**

20         To begin, Defendant argues that Plaintiff cannot state a claim because his allegations do
21   not place Defendant's product out of the safe harbor exception of Cal. Bus & Prof. Code §
22   17533.7.  (ECF No. 39, pp. 6-8.)  Even if Plaintiff has sufficiently pleaded to have the safe
23   harbor provision not apply, Defendant contends that no violation exists because any foreign-
24   sourced ingredients are defined as "raw materials."  (<u>Id.</u> at p. 8-10.)  In any event, Defendant
25   continues, arguing that Plaintiff has not plausibly pleaded that a reasonable consumer would be
26   deceived by the challenged label statements.  (<u>Id.</u> at pp. 10-15.)  Relatedly, Defendant asserts that
27   Plaintiff has not met the heightened pleading standards of Federal Rule of Civil Procedure 9.  (<u>Id.</u>
28   at pp. 15-16.)  Finally, Defendant argues that the complaint should be dismissed, or dismissed in

1  part, for independent deficiencies.  (Id. at pp. 16-20.)  Though the Court agrees with Plaintiff that

2  he has sufficiently alleged plausible facts that the safe harbor provision does not apply as to

3  mustard seed, the Court cannot agree with Plaintiff's "raw materials" position that the cultivation

4  of mustard is synonymous with manufacturing a product.  Moreover, the Court finds that

5  Plaintiff has not plausibly alleged that a reasonable consumer would have been deceived by the

6  labels.

7          The Court addresses the parties' arguments in the order it views is the most logical.

8          **A.      Raw Materials Exception**[3]

9          Defendant argues that, notwithstanding whether the safe harbor provision applies,

10  Plaintiff's consumer claims fail to state a claim because any foreign-sourced ingredients (*e.g.*,

11  mustard seed) are defined as "raw materials," which are not subject to Section 17533.7.  (ECF

12  No. 39, p. 8-10.)  For his part, Plaintiff resists this characterization, arguing that by cultivating

13  the mustard plant and harvesting the seed, the mustard seed is better understood as a

14  "manufactured" component.  (ECF No. 40, pp. 12-15.)  The Court agrees with Defendant.

15          The raw materials exception comes from the interpretation of Section 17533.7 by the

16  California courts.  See Benson v. Kwikset Corp., 152 Cal. App. 4th 1254, 1270-71 (Cal. Ct. App.

17  2007).  In Benson, the California Court of Appeal was tasked with interpreting what it means

18  when a product is "substantially made, manufactured, or produced outside the United States."

19  Id. at 1272.  The court began observing that Section 17533.7 is "limited to personal property

20  such as goods and wares that are bought and sold in the marketplace," in light of the statutes

21  repeated use of the term "merchandise."  Id. at 1271.  Next, the court determined that "[t]he

22  words 'made, manufactured, or constructed' cover almost everything which [human] skill . . .

23  can make out of raw materials."  Id. (alteration in original), quoting United States v. Anderson,

24  45 F. Supp. 943, 949 (S.D. Cal. 1942).  The court further observed that "there are many [judicial]

---

[3] Similar to the complaint, the first amended complaint contains appended exhibits.  (ECF No. 31.)  Neither party has expressly moved for incorporation or judicial notice of these exhibits.  Nor does the Court perceive a need at this moment to do so *sua sponte*.  Rather, the Court will assess Plaintiff's first amended complaint based on the allegations therein.  Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1159 (9th Cir. 2012).  Though Defendant at times takes issue with the basis for Plaintiff's allegations, the Court accepts as true, as it must, the factual allegations in the complaint and construes them in the light most favorable to Plaintiff.  Rowe, 559 F.3d at 1029-30.

holdings and statements to the effect that, to constitute manufacturing, . . . the operation, process, or activity in question must result in the production of a new and different article, product, or commodity, having . . . a distinctive name, character, or use." Id. at 1271-72 (internal quotation omitted). "'Manufacturing,' in this connection, has also been defined, in terms or substance, as the production of articles for use from raw or prepared materials by giving such materials new forms, qualities, properties, or combinations, whether by hand labor or by machinery . . . ." Id. at 1272 (internal quotation omitted). Significant to the case at bar, the court then stated that "one would not violate the statute by making, manufacturing, or producing merchandise solely in the United States even though using *raw materials* acquired from a foreign source." Id. (emphasis added). With this understanding, the Court then held that "merchandise has been 'substantially made, manufactured, or produced outside the United States' where the foreign operation, process, or activity employed to create the merchandise is found to be considerable in either amount, value, or worth." Id. Further, the court extended this definition to "any article, unit, or part" of merchandise. Id.; see also Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 685 (2006).

In support of his position that mustard seed is a manufactured or produced component, Plaintiff gives the following characterizations. Plaintiff states that mustard plants are grown, harvested, and cultivated, which transforms them into mustard seeds in Canada. (ECF No. 40, p. 13.) In addition, mustard farming involved specialized equipment and machine labor to plant and harvest the mustard seed. (Id.) In particular, Plaintiff notes that following pollination, mustard flowers dry out and turn into seedpods, which then are harvested by "large machines." (Id.) Thereafter, Plaintiff offers that the seeds are cleaned, sorted, graded, and subjected to quality assurance protocols. (Id.) Only then is the mustard seed transported from Canada to Defendant's facilities. (Id.)

Plaintiff hangs his hat on that, in his view, the mustard plant is "transformed" into mustard seed. (Id. at p. 14.) The Court is not convinced. Though Plaintiff outlines a detailed process whereby mustard seed is *cultivated*, Plaintiff has not alleged that mustard is *manufactured* or *produced*, as defined by the California Court of Appeal. See Benson, 152 Cal.

App. 4th at 1271-72.  In other words, Plaintiff's allegations do not describe how mustard grown in Canada is "transformed" into a new and different article, product, or commodity, having a distinctive name, character, or use.  Rather, Plaintiff merely describes the act of growing a plant from seed to seed.  And while Plaintiff attempts to separate mustard into its district parts (*i.e.*, the mustard plant from the mustard seed), this logic defies commonsense.  Indeed, with Plaintiff's understanding, all things grown that utilize a cultivation and/or harvesting process could never be considered raw materials, which the Court notes here would include the mustard greens.  Tellingly, Plaintiff has been unable to identify precedent where a court took the position that cultivation of a crop is synonymous with manufacturing.

Additionally, Plaintiff's observation that the Products include "mustard seed" as opposed to "mustard" on the label is of no moment.  Though the label bottle gives a consumer more specific information of which part of the plant is used in the product, this by itself does nothing in furthering the argument that cultivation is the same as manufacturing.

While the Court views the facts in light most favorable to Plaintiff, with every reasonable inference thereto, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010), quoting Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court finds that a finding here that the cultivation of mustard is synonymous with manufacturing, simply because Plaintiff says it is so, to be an unreasonable inference.

Plaintiff's lead, and only, authority is distinguishable.  In Banks v. R.C. Bigelow, Inc., the plaintiff alleged that the defendant's use of a "made in the USA" label violated Section 17533.7 because the tea used by the defendant was grown and processed in Sri Lanka and India.  536 F.Supp.3d 640, 644 (C.D. Cal. 2021).  Indeed, according to the plaintiff, the defendant's own website contained information that the tea harvested in Sri Lanka and India was processed, while still abroad, by exposing the tea to air, steaming, pan firing, and/or fermenting.  See Banks, No. 2:20-cv-06208-SVW-RAO, ECF No. 11, First Amended Complaint, ¶ 25 (C.D. Cal. Aug.

12, 2020).[4]  Thus, the court in <u>Banks</u> noted that the plaintiff had alleged that "the raw materials used to make the Products are wholly processed outside of the United States."  536 F. Supp. 3d at 648.  Given the allegations, the court determined that, in the case before it, "[w]hether the manufacturing using raw materials occur[ed] outside the United States or within the United States is a question of fact that cannot be resolved at this stage" and therefore denied the motion to dismiss.  <u>Id.</u>

As should be apparent, <u>Banks</u> is readily distinguishable because here there are no allegations that the raw material here (either mustard plants or seeds) is *processed* outside the United States.  <u>Banks</u> might have been more apposite had the tea leave been simply grown and then shipped to the defendant, but the plaintiff in <u>Banks</u> outlined an entire series of processing that purportedly occurred outside the United States.  Plaintiff has not otherwise demonstrated how <u>Banks</u> applies to the case at bar on this point.

For the forgoing reasons, the Court will recommend granting this portion of Defendant's motion to dismiss.

### B.    California Consumer-Protection Statutes and the Reasonable Consumer

Defendant argues that Plaintiff has not sufficiently alleged that a reasonable consumer would be misled or deceived by the Class Products for three reasons.  (ECF No. 39, p. 10.)  First, Defendant asserts that no reasonable consumer would misinterpret the actual label at issue here: "Crafted and Bottled in Springfield, MO, USA."  (<u>Id.</u> at p. 11.)  Second, Defendant argues that the "Crafted and Bottled" statement is not material to reasonable consumers.  (<u>Id.</u> at p. 12-14.)  Third, Defendant argues that no reasonable consumer would be misled by the "American Flavor in a Bottle" slogan used on the products.  (<u>Id.</u> at pp. 14-15.)  Plaintiff responds that he has sufficiently alleged, at the pleadings stage, that a reasonable consumer would be deceived by all of Defendant's labeling.  (ECF No. 40, pp. 15-19.)  In context, the Court agrees with Defendant.

The CLRA, UCL, and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood

---

[4] The Court *sua sponte* takes judicial notice of the first amended complaint filed in <u>Bankes v. R.C. Bigelow, Inc.</u> <u>Harris v. Cnty. of Orange</u>, 682 F.3d 1126, 1132 (9th Cir. 2012).

1    or tendency to deceive or confuse the public." Moore v. Mars Petcare US, Inc., 966 F.3d 1007,

2    1017 (9th Cir. 2020). Plaintiff's claims under these consumer protection statutes are governed

3    by the "reasonable consumer" test. See Daldalian v. Pepsico, Inc., No. 2:25-cv-01491-WLH-E,

4    2025 WL 2778326, at *3 (C.D. Cal. Sept. 3, 2025). That standard requires a plaintiff to

5    demonstrate that "members of the public are likely to be deceived." Williams v. Gerber Products

6    Co., 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted). "This is not a negligible burden."

7    Moore v. Trader Joe's Company, 4 F.4th 874, 882 (9th Cir. 2021). Pointing to a mere possibility

8    that a label "might conceivably be misunderstood by some few consumers viewing it in an

9    unreasonable manner" is insufficient. Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496

10   (Cal. Ct. App. 2003). The "reasonable consumer standard" instead requires a showing "that a

11   significant portion of the general consuming public or of targeted consumers, acting reasonably

12   in the circumstances, could be misled." Id.; see also Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th

13   Cir. 2016). "[A] plaintiff's unreasonable assumptions about a product's label will not suffice."

14   Moore, 4 F.4th at 882.

15       In Moore, the Ninth Circuit gave guidance regarding ambiguous labels. Id. Thus, when

16   encountering an ambiguous label, courts should employ "the general principle that deceptive

17   advertising claims should take into account all the information available to consumers and the

18   context in which that information is provided and used." Id., quoting Bell v. Publix Super

19   Markets, Inc., 982 F.3d 468, 477 (7th Cir. 2020); see also Becerra v. Dr Pepper/Seven Up, Inc.,

20   945 F.3d 1225, 229 (9th Cir. 2019). Though the Moore Court observed that "[d]eceptive

21   advertisements often intentionally use ambiguity to mislead consumers while maintaining some

22   level of deniability about the intended meaning[,]" the Court also noted that it remains the case

23   that "where plaintiffs base deceptive advertising claims on unreasonable or fanciful

24   interpretations of labels or other advertising, dismissal on the pleadings may well be justified."

25   Id. at 882-83.

26       **1.    "Crafted and Bottled in Springfield, MO, USA"**

27       Plaintiff's CLRA, UCL, and FAL claims depend on the allegation that the Crafted and

28   Bottled in Springfield, MO, USA label ("Crafted label") is misleading or has a capacity,

1    likelihood, or tendency to deceive or confuse the public.  Defendant argues that the Crafted label

2    appears in fine print on the backside of the product, underneath the nutritional information, and

3    truthfully states where the Products were prepared and bottled.  (ECF No. 39, p. 11.)  Thus,

4    Defendant posits that no reasonable consumer would be misled into believing that the Crafted

5    label means that all the Products' ingredients were grown and harvested in Springfield, Missouri.

6    (Id.)  Plaintiff opposes, arguing that the FTC has broadly defined "Made in the United States" to

7    include any express or implied unqualified U.S. origin representation, including the term

8    "crafted."  (ECF No. 40, pp. 17-18, quoting 16 C.F.R. § 323.1(a).)  Essentially, Plaintiff argues

9    that this definition from the FTC ends the discussion on this argument.    (Id.)    Though

10   acknowledging that the FTC's definition includes the term "crafted," Defendant replies that this

11   has little to do with how courts evaluate California's consumer protection laws regarding the

12   reasonable consumer test with the labels at hand.  (ECF No. 41, pp. 6-7.)  Defendant then asks

13   the Court to evaluate the Craft label in context.  The Court agrees with Defendant in all respects.

14       Defendant notes that the Crafted label is not an unqualified "Made in the USA" claim,

15   but it reads in context as "Crafted and Bottled" with "in Springfield, MO, USA" which would

16   not plausibly lead a reasonable consumer to believe that each and every one of the Products'

17   ingredients are grown in Springfield, Missouri.  (ECF No. 41, p. 7.)  Moreover, Defendant notes

18   that this statement is located on the back of the Products, underneath the nutritional information,

19   in smaller text.  (ECF No. 39, p. 12.)  In other words, it does not appear that the Crafted label is

20   the forefront for the advertising of the Products.

21       The Court acknowledges that dictionaries define "to craft" as "to make or produce with

22   care, skill, or ingenuity."    "Craft," Merriam-Webster.com Dictionary, Merriam-Webster,

23   https://www.merriam-webster.com/dictionary/craft (accessed Dec. 16, 2025).  Yet, the Court

24   cannot find that, under the circumstances of the Products in context, that the label "Crafted and

25   Bottled in Springfield, MO, USA" to be equivalent to "Made in the U.S.A." for purposes of

26   evaluating the label under the reasonable consumer test.  In particular, the label uses the term

27   "bottled" along with crafted and identifies a specific town, in a specific state.  It therefore strains

28   credulity that a reasonable consumer would assume that every single ingredient in the Products

1  was grown and produced in a single city in the United States.

2      This point is bolstered by the ingredients listed on the Products. For example, in

3  French's Chardonnay Dijon Mustard the ingredients are: "distilled vinegar, water, #1 grade

4  mustard seed, salt, chardonnay wine, spices & turmeric." (ECF No. 31, ¶ 41.) Thus, under

5  Plaintiff's reasoning, a consumer would look at this ingredient list, and then the Crafted label,

6  and then would assume that the distilled vinegar, salt, and chardonnay wine were all made in

7  Springfield, Missouri. The Court finds that this is an "unreasonable or fanciful" interpretation.

8  Moore, 4 F.4th at 883; see Davis v. HSBC Bank, Nev., N.A. 691 F.3d 1152, 1162 (9th Cir. 2012)

9  (A "representation does not become 'false and deceptive' merely because it will be unreasonably

10  misunderstood by an insignificant and unrepresentative segment of the class of persons to whom

11  the representation is addressed.").

12      To be sure, Plaintiff is correct that the FTC has defined the term "Made in the United

13  States" as "any unqualified representation, express or implied, that a product or service, or a

14  specified component thereof, is of U.S. origin, including, but not limited to . . . crafted in the

15  United States or in American, or any other unqualified U.S.-origin claim." 16 C.F.R. § 323.1.

16  Moreover, Plaintiff notes that Section 17533.7 states that "Made in the U.S.A." also includes the

17  terms "'Made in America,' 'U.S.A.,' or similar words . . . ." Cal. Bus. & Prof. Code §

18  17533.7(a). But Plaintiff does not contend with Defendant's argument that the Crafted label is

19  not an unqualified original label but "Crafted and Bottled in Springfield, MO, USA," and how

20  this label should be analyzed under the *reasonable consumer expectation test* for UCL, FAL, and

21  CLRA claims.

22      Plaintiff has provided one case, which the Court finds distinguishable. In James v.

23  Chocmod USA Inc., the plaintiff sued the defendant over its chocolate truffles that were labeled

24  as "Truffettes de France" on the front packaging. 773 F. Supp. 3d 945, 949 (E.D. Cal. 2025).

25  The plaintiff alleged that this phrase translated to "truffles from France," but, in reality, the

26  truffles were manufactured in Canada. Id. The court observed that under Ninth Circuit

27  precedent, if the front label is "plausibly misleading to reasonable consumers, then the court does

28  not consider the back label at the pleadings stage." Id., quoting Whiteside v. Kimerly Clark

1  Corp., 108 F.4th 771, 778 (9th Cir. 2024).  The court found that the front label was not

2  ambiguous and "would plausibly mislead a reasonable consumer to conclude, without more

3  information, that truffles are, indeed, from France."  Id. at 957.  In particular, the James court

4  was persuaded by the fact that the representation on the front of the packaging represented that

5  the truffles were "from France," as opposed to mere references to France or French culture.  Id.

6  at 957-59.  Thus, the court never got to the defendant's argument that on the back panel there

7  was a label stating "product of Canada."  Id. at 957.

8          Here, the label at issue is on the back of the packaging, in smaller font, below the

9  nutritional information.  Moreover, as explained above, the Crafted label read in context,

10  including the ingredients, would not lead a reasonable consumer to believe that every ingredient

11  was made and produced in Springfield, Missouri.  To be sure, it would have been a different case

12  had the front packaging of the Products contained the label: "Mustard from the United States,"

13  but that is not the case before the Court.

14          Although a determination of what a "reasonable person" might believe is generally a

15  question of fact and inappropriate for resolution on a motion to dismiss, see Hammerling v.

16  Google LLC, 615 F. Supp. 3d 1069, 1082 (N.D. Cal. 2022), the Court views the instant motion

17  to trigger one of those rare exceptions as a matter of law.  See Carrea v. Dreyer's Grand Ice

18  Cream, Inc., 475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal with prejudice of FAL,

19  CLRA, and UCL claims because no reasonable consumer would be misled by the disputed

20  label).

21          For the forgoing reasons, the Court will recommend granting Defendant's motion as to

22  Plaintiff's claims arising from the label: "Crafted and Bottled in Springfield, MO, USA."[5]

23  / / /

24

25  [5] For substantially similar reasons, the Court agrees with Defendant that the Crafted label is likely not material.  A
    representation is material if a reasonable consumer "would attach importance to [the representation's] existence or
26  nonexistence in determining his choice of action in the transaction in question."  Kwikset, 51 Cal. 4th at 332.  That
    said, the materiality analysis applies when courts asses the propriety of class certification.  See, e.g., Gross v. Vilore
27  Foods Company, Inc., No. 20-cv-00894-LL-JLB, 2022 WL 1063085 (S.D. Cal. Apr. 8, 2022); Kumar v. Salov
    North America Corp., No. 14-cv-02411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016).  Because the Court is
28  tasked with determining whether Plaintiff has stated a claim in his first amended complaint, the Court defers ruling
    on this issue until an appropriate time.

1          2.      "American Flavor in a Bottle"

2          The other label at issue on the Products is on the front packaging that states: "American

3    Flavor in A Bottle" ("Flavor label").  (See ECF No. 31, pp. 8-11.)  Defendant argues that the

4    Flavor label is not an actional origin claim because it does not purport that the Products are from

5    anywhere.  (ECF No. 39, pp. 14-15.)  In particular, Defendant observes the incongruity of the

6    Flavor label making an origin claim and the Products including Dijon and Chardonnay varieties.

7    (Id.)  In response, Plaintiff argues that when a consumer reviews the Flavor label "they are led to

8    believe that the mustard seeds themselves . . . are domestically sourced."  (ECF No. 40, p. 16.)

9    The parties then discuss caselaw.  The Court again agrees with Defendant.

10         From the outset, the Court dispels Plaintiff's assertion that "whether that representation is

11   deceptive is a question of fact that cannot be resolved on a motion to dismiss," (ECF No. 40, p.

12   17), when the Ninth Circuit recently reaffirmed as much in Moore, as discussed above.  4 F.4th

13   at 883; see also Shaeffer v. Califia Farms, LLC, 44 Cal. App. 5th 1125, 1140 (Cal. Ct. App.

14   2020) ("Although 'whether consumers are likely to be deceived' typically 'a question of fact,'

15   that issue may be resolved on demurrer if 'the facts alleged fail as a matter of law to show' that a

16   'reasonable consumer would be misled.'") (internal citations omitted).

17         The Court next addresses Plaintiff's lead case in support that the Flavor label is plausibly

18   deceptive or misleading.  In de Dios Rodriguez v. Olé Mexican Foods, the plaintiff "relied on

19   Defendant's references to the Mexican flag, the phrase 'El Sabor de Mexico!' or "A Taste of

20   Mexico!", the brand name 'La Banderita,' and the Spanish phrase 'Tortillas de Maiz' on the

21   label of the Corn tortillas" when purchasing some corn tortillas.  No. EDCV 20-2324 JGB (SPx),

22   2021 WL 1731604, at *1 (C.D. Cal. Apr. 22, 2021).  Viewing the packaging in total, the court

23   held that the complaint alleged "a probability that a significant portion of the general consuming

24   public or of targeted consumers, acting reasonably in the circumstances, could be misled."  Id. at

25   *4, quoting Ebner, 838 F.3d at 965.  In particular, the court was persuaded by the product's

26   phrase "A Taste of Mexico," a Mexican flag front and center, the brand name "La Banderita," a

27   Mexican flag with the word "Authentic," and other Spanish words and phrases, such as

28   "Sabrosísimas" or "Tortillas de Maiz."  Id.

Here, by contrast, the Flavor label states only "American Flavor in a Bottle."  Images of the Products incorporated by Plaintiff in his complaint show that the Flavor label is on the front packaging of the Products as the first phrase on the bottle but in smaller text than the second line, which reads the Product's name brand, "French's," that is overlayed on a red, waiving flag. There is no other imagery or phrasing on the front bottle that can reasonably be said to invoke America or an origin.  There is no American flag (or use of American flag coloring), the brand name is French's, and the word 'authentic' is not used in conjunction with the mustard or method of production.  Thus, the Court finds the de Dios Rodriguez case to be factually distinguishable from the case at bar.

In contrast, Defendant has provided a litany of cases that support its position.  In Steinberg v. Icelandic Provisions, Inc., the plaintiff bought a cultured dairy product called "skyr" from a company with the brand name "Icelandic Provisions."  No. 21-cv-05568-EMC, 2022 WL 220641, at *1 (N.D. Cal. Jan. 25, 2022).  The label on the product included that it was "Traditional Icelandic Skyr."  Id.  However, on the back label, it stated that the product was "Proudly made in Batavia, NY."  Id.  The court began with the brand name Icelandic Provisions and noted that while brand names can at times be deceptive, it did not find it to be deceptive because the brand name was not specific as to the place of production.  Id. at *4.  Thus, the court turned to whether the brand name coupled with the label "Traditional Icelandic Skyr" (along with the accompanying snowy countryside imagery) would mislead reasonable consumers into believing the product was made in Iceland.  Id.  In rejecting that this could cause a reasonable consumer to be misled, the Steinberg court began by observing that the skyr product label "did not have Icelandic words, the Icelandic flag, or the word "authentic" like the label in de Dios Rodriguez."  Id. at *6.  Additionally, it did not have the phrase "Iceland" with a date of founding, or phrases such as "a piece of Mexico," or a consumer survey about the perception of the product.  Id.  The court then found that the case was closer to the Maeda v. Kennedy Endeavors, Inc., 407 F. Supp. 3d 953 (D. Haw. 2019), where a court ruled that the word "Hawaiian," even when accompanied by imagery associated with Hawaiʻi, did not amount to a representation that the subject Hawaiian snacks were from Hawaiʻi.  Id.

The Court finds that this case is closer to Steinberg than to de Dios Rodriguez.  In fact, the Court agrees with the analysis in Steinberg distinguishing de Dios Rodriguez.  Moreover, though each case is distinct, the Court finds Defendant's offered caselaw to be persuasive on this issue.  See Hodges v. King's Hawaiian Bakery West Inc., No. 21-cv-04541-PJH, 2021 WL 5178826, *5-*7 (N.D. Cal. Nov. 8, 2021) (dismissing claims where rolls were described as "Hawaiian Rolls"); Maeda v. Kennedy Endeavors, Inc., 407 F. Supp. 3d 953, 969-72 (D. Haw. 2019) (dismissing claims where potato chips' labels use the terms "Hawaiian" and "Sweet Maui Onion Rings"); see also Bowring v. Sapporo U.S.A., Inc., 234 F. Supp. 3d 386, 390-92 (E.D.N.Y. 2017) (dismissing claims where Sapporo beer claimed to be "the original Japanese beer"); Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 675-76 (E.D.N.Y. 2017) (dismissing claims where Foster's beer referred to as an "Australian beer brand").

Plaintiff then turns the tables, arguing that Defendant did not provide a plausible alternative to what the Flavor label might mean to consumers.  (ECF No. 40, p. 17.)  However, on a motion to dismiss, the Court generally looks only to whether the complaint plausibly alleges a claim for which relief can be granted, not whether a defendant has offered an alternative.  Plaintiff's last auxiliary argument is that should the Court determine that the Flavor label is ambiguous, the Court should then read the Flavor label in concert with the Crafted label, in light of Moore.  Yet, even viewing the Flavor label as ambiguous and requiring the Court to assess it with the back of the Products and the Crafted label, the Court finds that the Crafted label does not push the Flavor label over the line in terms of plausibly deceiving a significant portion of the general consuming public for substantially similar reasons as discussed above.

As with the Crafted label, the Court finds that the Flavor label to be one of those rare exceptions requiring dismissal as a matter of law.  See Carrea, 475 F. App'x at 115.

In sum, the Court will recommend granting Defendant's motion to dismiss as it pertains to the application of the reasonable consumer test and the Flavor label.

**C.     Safe Harbor Provision, Cal. Bus. & Prof. Code § 17533.7**

Recall that Plaintiff takes issue with Defendant's line of mustard that contain labeling stating that the mustard is "Crafted and Bottled in Springfield, MO, USA" as well as 'American

Flavor in a Bottle.'  Under California law, statements such as "Made in the USA" and similar, are subject to legal scrutiny.  Cal. Bus. & Prof. Code § 17533.7(a).  Under Section 17533.7, it is unlawful for a person or entity to sell or market merchandise that contains a "made in the USA" term if the product has been entirely or substantially made, manufactured, or produced outside the United States.  Id.  However, there are two exceptions.  First, "if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product," then Section 17533.7 does not otherwise apply.  Cal. Bus. & Prof. Code § 17533.7(b).  Second, if the manufacturer can demonstrate that it cannot produce an article, unit, or part of a product—and it cannot otherwise obtain such article, unit, or part domestically—then Section 17533.7 does not apply if articles, units, or parts obtained outside the United States do not constitute more than 10 percent of the "final wholesale value" of the manufactured product.  Cal. Bus. & Prof. Code § 17533.7(c).

It appears that Defendant does not dispute that its mustard seed, or at least some portion thereof, is sourced from Canada.  That said, Defendant argues that Plaintiff has not sufficiently alleged that the mustard seed constitutes five or more percent of the final wholesale value of Defendant's mustard products.  (ECF No. 39, pp. 5-6.)  Both parties seem to acknowledge that there is no statutory definition of what "final wholesale value" means under Section 17533.7.  Therefore, this is the crux of this argument.  Defendant argues that the Court should import the definition of "California wholesale value" from another California law that regulates a program for putting statements on products with the term "Made in California."  (Id., citing  10 Cal. Code Reg. § 8120(c)(1).)  Namely, Defendant asks the Court to define "wholesale value" as only the direct and indirect material and labor costs of a product or a component.  (Id. at p. 6.)  Plaintiff opposes, arguing that the District Judge has already at least partially defined "value," which includes "consideration of consumer preferences in a manner consistent with the FTC's standard."  (ECF No. 40, p. 6, citing Order Adopting Findings and Recommendation, ECF No. 30, p. 8 n.4 (E.D. Cal. Aug. 12, 2025).)  On this, the Court agrees with Plaintiff.

Defendant has offered two reasons to import the definition of "wholesale value" from the "made in California" regulation.  First, Defendant observes that both statutes aim to cover origin

1    labeling. Second, Defendant argues that the legislative history supports the definition being

2    imported. The Court is not persuaded.

3        To begin with, the "made in California" regulation, though similar insofar as regulating

4    origin labeling, is materially different from the "made in the USA" statute. First, the "made in

5    California" regulation creates a program that allows products to contain a "CA Made label"

6    where the product is "substantially made" in California. See 10 C.C.R. §§ 8100, 8110. In order

7    to obtain a "CA Made label," a third-party certifier determines whether a product "substantially

8    made" in California through a prescribed mathematical formula. 10 C.C.R. § 8120(b). That

9    formula, embedded within the statute, is that the "California wholesale value" is calculated by

10   calculating the sum of "California direct and indirect material costs; and, California direct and

11   indirect labor costs." Id. at (c)(1)(A), (b). The third-party certifier then determines the "total

12   product cost" by calculating the sum of the "California wholesale value," the "[d]irect and

13   indirect material cost from outside California; and, [d]irect and indirect labor cost from outside

14   California." Id. at (c)(2)(A)-(C). Thereafter, the third-party certifier calculates the "California

15   value" by dividing the California wholesale value by the total product cost. Id. at (c)(3). The

16   statute excludes any value from research and development from the California value. Id. at

17   (c)(4). This regulation also directs that a third-party certifier shall determine whether the product

18   meets the separate "Made in the USA" definition. Id. at (b). Upon review of the regulatory

19   scheme, there does not appear to be any provision making such statements "unlawful" as in

20   Section 17533.7; rather, and again, the regulation appears to be setting out a regulatory program.

21   Relatedly, there is no safe harbor provision in this regulation.

22        Meanwhile, Section 17533.7 declares that it is *unlawful* for a person or entity to make

23   "Made in the USA" statements on products, and Section 17533.7 contains the safe harbor

24   provisions discussed above. Section 17533.7 does not otherwise contain a formula or otherwise

25   define "wholesale value." Notably, while the "made in California" regulation appears to be

26   determining whether a product is substantially made *within* California, the "made in the USA"

27   statute appears to be determining whether a product has been entirely or substantially made

28   *outside* of the United States. Therefore, though both the "made in the USA" statute and "made

in California" regulation deal with origin labeling on products, Defendant has not persuasively presented that the purpose and structure of the statute and regulation are so similar as to warrant importing an explicit mathematical formula from one into the other.

Moreover, Defendant appears to import in only that wholesale value is calculated by direct and indirect material and labor costs; Defendant does not go further and suggest that the Corut should also import the mathematical calculation (to be conducted by a third-party certifier) to obtain a 'USA wholesale value' to then be compared against the value of the product as a whole. Indeed, the fact that the "made in California" regulation contains such a nuanced and clear process counsels the Court away from importing this definition into Section 17533.7. Had the California Legislature wished to include such a calculation in Section 17533.7, it could have done so.

Defendant's reliance on legislative history fares no better. Defendant directs the Court to the following passage:

> One important question left unaddressed by this bill is how the amount of permissible foreign content would be measured: is 5% or 10% of the final product to be determined by wholesale value, retail value, production cost, weight, volume, surface area, number of parts, some combination thereof, or some other unknown metric? The available precedents (federal and California) suggest that manufacturing cost or wholesale value would be the most logical metrics to apply in the absence of specific direction.

(ECF No. 36, Exh. A, pp. 6-7.)[6]

Yet, the history continues, noting that both available precedents (federal and California) suggest that manufacturing cost or wholesale value are the most logical metrics. (Id. at p. 7.) After discussing the FTC's guidance on complying with its "made in the USA" standard, and the "made in California" regulations, the legislative history suggested amending Section 17533.7 so

---

[6] Defendant has moved for judicial notice of legislative history regarding SB 633. "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). Doing so would convert a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). However, a court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Courts may also take judicial notice of undisputed matters of public record, Lee, 250 F.3d at 689, including documents filed in federal or state courts. Harris, 682 F.3d at 1132. The Court grants Defendant's request and takes judicial notice of SB 633, Assembly Committee on Privacy and Consumer Protection, Analysis of SB 633, July 7, 2015. (ECF No. 36-2.)

1    that the safe harbor percentages should be clearly measured by "wholesale value." (Id.) The

2    legislative history does not otherwise attempt to define wholesale value or discuss the

3    mathematical formula in the "made in California" regulation. Thus, while the legislative history

4    does demonstrate that the Legislature was aware and clearly passed Section 17533.7 to include

5    'wholesale value,' it does not otherwise militate that the Court should import the definition of

6    "California wholesale value" from the "made in California" regulation.

7         To be sure, the Court does not necessarily disagree with Defendant that some aspect of

8    manufacturing and labor costs make up part of the wholesale value calculation, but Defendant

9    has not persuasively argued that they are they *only* factors considered. Indeed, Defendant offers

10   no caselaw in support of this limitation. On the other hand, the Court notes that the Hon.

11   Jennifer L. Thurston observed, in her order adopting the Court's findings and recommendations,

12   that "[b]y focusing on 'value' instead of 'cost' the California safe harbor provision allows for

13   consideration of how important a consumer might perceive the foreign input (e.g., the imported

14   watch "movement" offered as an example by the FTC) is to the overall value of the product."

15   (ECF No. 30, p. 5.) Indeed, Judge Thurston expressly declined to accept the Court's suggestion

16   that "wholesale value" equated to the FTC's use of the term "costs." (Id. at p. 5 n.4.) Though

17   Defendant acknowledges Judge Thurston's conclusions, it nonetheless glosses over this and

18   directs the Court back to its proffer that "wholesale value" here should mean only direct and

19   indirect manufacturing and labor costs. (ECF No. 41, p. 3.) This is not persuasive at this

20   juncture.[7]

21        For these reasons, the Court rejects Defendant's suggestion to import the definition of

22   "wholesale value" form the "made in California" regulation into the "made in the USA" statute.

23        In the absence of a bright-light definition, the Court considers multiple factors are valid

24   when determining a product's wholesale value, including U.S. manufacturing costs, how far

---

25   [7] Though the Court does not disagree that "value" and "cost" are distinct terms, the Court finds that the adjective

26   "wholesale" before "value" alters the term as the Court expressed in its previous findings and recommendations. In
     other words, in defining "wholesale value," the Court notes that such a definition differs from the definition for
     "value" because of the qualification of "wholesale" before "value." Also, the definition of "costs" differs from both

27   "wholesale value" and "value." (See ECF No. 27, p. 14.) That said, the Court recognizes the District Court's
     holding on this determination and that such holding is the law of the case. See Wilkins v. United States, 163 F.4th

28   636, 644 (9th Cir. 2025).

removed the finished product any foreign content is, the importance of the foreign content to the function of the product, and the consideration of how important a consumer might perceive the foreign input.  (See id. at p. 5); see also Made in USA Labeling Rule, 86 FR 37022-01, 2021 WL 2936549, (July 14, 2021); Beson v. Kwikset Corp., 152 Cal.App.4th 1254, 1272 (Cal. App. 2007) ("[W]e conclude merchandise has been 'substantially made, manufactured, or produced outside the United States' where the foreign operation, process, or activity employed to create the merchandise is found to be considerable in either amount, value, or worth.").

Here, Plaintiff has more than adequately pleaded that importance of the foreign input, mustard seed, is to the end product, mustard.  (ECF No. 31, ¶¶ 61, 65-66, 77-78, 86-92.)  Indeed, Plaintiff goes so far as to suggest that mustard seed is tantamount with mustard, a sentiment the Court finds is commonsense.  (Id. at ¶ 86.)  Thus, the Court finds that Plaintiff has sufficiently pleaded, under the circumstances of this case, that the wholesale value of mustard seed in mustard products exceeds five percent.  Notwithstanding the parties' discussions revolving around percentages and weights of the actual mustard seed in a mustard product, the truth is that without mustard seed, a product would quite simply not be mustard.[8]  Therefore, taking all allegations and inferences in favor of Plaintiff, the Court finds that Plaintiff has plausibly alleged that the wholesale value of mustard seed in mustard is at or above five percent.  See Daldalian v. Pepsico, Inc., No. 2:25-cv-01491-WLH-E, 2025 WL 2778326 (Sept. 3, 2025) (On a motion to dismiss, "[t]he Court does not expect Plaintiff to have proven [a component's final wholesale value] with mathematical precision.").

Defendant's lead case in opposition is not persuasive.  In Flodin v. Central Garden & Pet Company, the plaintiff sued regarding a "made in the USA" food label on pet food.  No. 21-cv-01631-JST, 2023 WL 4686016, at *1 (N.D. Cal. July 21, 2023).  In particular, this pet food, brand name AvoDerm, purported to contain avocado.  In the defendant's marketing, it stated that avocado was a "key ingredient," a "top ingredient," that AvoDerm could provide nutritious

---

[8] The Court reminds the parties that on a motion to dismiss, the Court must take all factual allegations and inferences in the light most favorable to Plaintiff.  Notwithstanding this determination, nothing in this order should be viewed as precluding Defendant from later raising this argument on summary judgment following discovery should it be warranted.

meals and that avocados are a great source of good fats, avocado was listed as the eighth ingredient and pet food is labeled according to weight, and that the "o" in AvoDerm featured a picture of an avocado. Id. at *1-*2. The court was unpersuaded, finding that these allegations to be more conclusory than factual. Id. at *2. Specifically, the Court identified the plaintiff's main factual allegation, the ingredient order, and noted that nothing about an ingredient order would compel that a particular ingredient constitutes any specific percentage of the product. Id. While on the line, the Court found that though avocado could possibly be five percent or more of the product, it was not persuaded that the plaintiff had alleged that it was plausible under the circumstances. Id. Thus, the court denied the motion to dismiss.

Yet, it is not apparent in Flodin what definition the court was using in determining the wholesale value of the product. Indeed, it does not appear that this argument was before the Flodin court. It seems that the court was looking strictly to the purported alleged percentage of avocado in the product in order to assess the wholesale value. However, the Court notes that the District Judge has already ruled that wholesale value may "allow for consideration of consumer preferences," (ECF No. 30, p. 5 n.4), and therefore, Flodin is not dispositive nor persuasive on this issue. Defendant's other offered precedent is likewise unpersuasive; it appears that none of these courts were squarely presented with the argument of how to interpret the term "wholesale value." See Hood v. Handi-Foil Corp., No. 24-cv-02373-RS, 2024 WL 4008711 (N.D. Cal. Aug. 29, 2024) (finding the plaintiff merely restated the statutory language without alleging facts to support that a component in a product's final wholesale value was more than ten percent); Fitzpatrick v. Tyson Foods, Inc., No. 2:16-cv-00058-JAM-EFB, 2016 WL 5395955 (E.D. Cal. Sept. 27, 2016) (using a definition requiring the plaintiff to allege the percentage of foreign sourced materials contained in the defendant's product); Alaei v. Rockstar, Inc., 224 F.Supp.3d 992 (S.D. Cal. 2016) (finding the only factual allegation to support the plaintiff's claim to be insufficient: "Defendants' products contain various amounts of taurine, guarana seed extract, and milk thistle extract, which, among other ingredients in Defendants' products, are not from the United States"); Hass v. Citizens of Humanity, LLC, No. 14-cv-01404-JLS (WVG), 2016 WL 7097870 (S.D. Cal. Dec. 6, 2016) (finding the plaintiff's allegations to be conclusory, including

1  that "on information and belief" the defendant may have incorporated foreign fabric and notions

2  into products).[9]

3      In light of the forgoing, the Court will recommend denying Defendant's motion to

4  dismiss insofar it seeks to dismiss Plaintiff's claim though Section 17553.7's safe harbor

5  provision.

### D.    Rule 9 Heightened Pleading Standards

7      To begin, there appears to be some confusion regarding the proper standard in cases

8  involving the UCL, FAL, and CLRA (and other state law claims).  As explained below, the

9  Court finds that Rule 9 applies to Plaintiff's claims.  However, even with this finding, the Court

10  finds that Plaintiff has sufficiently pleaded under Rule 9.

11      In Kearns v. Ford Motor Co., the Ninth Circuit observed that, "[w]hile fraud is not a

12  necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that

13  the defendant engaged in fraudulent conduct."  567 F.3d 1120, 1126 (9th Cir. 2009).  Thus, "[a]

14  plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of

15  conduct as the basis of that claim.  In that event, the claim is said to be 'grounded in fraud' or to

16  'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of

17  Rule 9(b)."  Id., citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

18      In turn, Rule 9(b) demands that the circumstances constituting the alleged fraud "be

19  'specific enough to give defendants notice of the particular misconduct . . . so that they can

20  defend against the charge and not just deny that they have done anything wrong.'"  Bly-Magee v.

21  California, 236 F.3d 1014, 1019 (9th Cir.2001), quoting Neubronner v. Milken, 6 F.3d 666, 671

22  (9th Cir.1993).  "Averments of fraud must be accompanied by 'the who, what, when, where, and

23  how' of the misconduct charged."  Vess, 317 F.3d at 1106, quoting Cooper v. Pickett, 137 F.3d

---

[9] Lurking about in footnotes and elsewhere in the briefing on the motion to dismiss, the parties spar over the other ingredients Plaintiff alleges are foreign-sourced, namely turmeric and paprika.  For safe harbor provision argument, the Court again observers that the provision provides: "if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product."  Cal. Bus. & Prof. Code § 17533.7(b).  Because the statute provides the Court should look whether *all* parts of the mustard product constitute more than five percent, the Court need not determine separately whether paprika and turmeric individually or together constitute five percent—in light of the Court's findings that Plaintiff has alleged that mustard seed alone constitute five or more percent of the Products wholesale value.

616, 627 (9th Cir.1997).  A party alleging fraud must "set forth more than the neutral facts necessary to identify the transaction."  Kearns, 567 F.3d at 1124, quoting In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

In resisting that Rule 9 applies, Plaintiff suggests that some of his claims are "nonfraudulent" (Plaintiff is not specific as to which claims), making them not subject to the Rule 9 pleading standards.  The Court is not persuaded.  In support of this position, Plaintiff cites to Caldwell v. Nordic Naturals, Inc., 709 F. Supp. 3d 889 (N.D. Cal. 2024).  There, the district court acknowledged that the Ninth Circuit's holding in Kearns regarding California consumer protection statute claims and the Rule 9 pleading standard.  Id. at 904.  However, the Caldwell court took the position that "where California consumer protection claims derive from purportedly misleading statements made on a product's label, rather than a course of conduct over time, as is the case here, the Ninth Circuit does not apply the heightened Federal Rule 9(b) standard."  Id.  In support of this holding, the court cited to McGinity v. Procter & Gamble Company, 69 F.4th 1093, 1096 (9th Cir. 2023), as an example where the Ninth Circuit analyzed UCL, FAL, and CLRA claims without going into the issue of Rule 9 pleading standards.  On this, the Court respectfully does not align with Caldwell.

In McGinty, the plaintiff sought review of the district court's dismissal of the complaint for failure to state a claim because the appellant "did not 'allege sufficient facts to show that a reasonable consumer would be deceived by P&G's labeling.'"  69 F.4th at 1096.  Thus, the only issue before the Ninth Circuit in McGinty was whether the district court erred in its application of the reasonable consumer standard pursuant to California's consumer protection statutes.  Id. at 1097-1100.  The Ninth Circuit affirmed, and in so doing, the only otherwise explicit holding was that, "[w]e hold that when, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the back label."  Id. at 1099.  Thus, the Court does not find McGinty to stand for any proposition regarding California consumer protections statutes in concert with the Rule 9 pleading standard.[10]

---

[10] Without the issue of pleading standards being squarely addressed, this Court is leery for two reasons to extrapolate a principle from an absence of it being discussed in an appellate decision.  First, the Court observes that a plaintiff may meet the Rule 9 pleading standard and nonetheless fail to meet the reasonable consumer expectations test.

1    To be sure, there might be instances where a plaintiff raises a California consumer

2  protection claim and at the same time does not "allege a unified course of fraudulent conduct and

3  rely entirely on that course of conduct as the basis of that claim." Kearns, 567 F.3d at 1126.

4  And in those cases, a court might well find that Rule 9 pleading standards do not apply.

5  However, the Court finds that here Plaintiff has alleged a scheme whereby Defendant

6  intentionally placed misleading statements on a product in order to induce the sale of the product

7  to the purchasing public.  Indeed, Plaintiff agrees that some of his claims sound in fraud, and his

8  attempt to split hairs on other claims is not persuasive.  (See ECF No. 40, p. 20.)

9    Notwithstanding the forgoing, the Court finds Plaintiff has sufficiently pleaded under the

10  Rule 9 standard.  Plaintiff has identified the "who" as Defendant, the manufacturer of French's

11  mustard, and himself, the customer (and lead plaintiff of a putative class).  According to

12  Plaintiff, the "what" is that the Products in question contain two misrepresentations, the Crafted

13  label and the Flavor label.  Regarding "when," Plaintiff has alleged that he purchased French's

14  Dijon Mustard on April 11, 2023, and French's Yellow Mustard on March 1, 2023; Plaintiff's

15  proposed class period is four-years prior to the filing of the first amended complaint.  Though

16  Plaintiff focuses in his brief on the "where" as the physical location of the labels on the bottle,

17  but Plaintiff also alleges in the operative complaint that he purchased his products through

18  Walmart's mobile application while he was physically located in Manteca, California.  For

19  "how" and "why," Plaintiff has alleged that the misleading statements convey to consumers that

20  the ingredients in the Products are domestically sourced thereby inducing a sale for Defendant's

21  economic gain.

22    Defendant's arguments in opposition to this are unavailing.  Defendant argues that

23  Plaintiff has not identified the exact products or the exact labels Plaintiff relies upon; in reality,

24  Therefore, it was perfectly possible for the defendant in McGinty to not raise the Rule 9 issue in the district court (it

25  did not).  See McGinty v. Procter & Gamble Company, No. 4:20-cv-08164-YGR, 2021 WL 3886048 (N.D. Cal. Aug. 31, 2021).  Second, principles of appellate review generally restrict a reviewing court to issues raised by the

26  parties, with limited exceptions such as subject-matter jurisdiction.  With this understanding, it can become akin to reading tea leaves when attempting to discern affirmative legal principles from what an opinion does not say.  For

27  example, the Ninth Circuit in McGinty did not discuss the Rule 8 pleading standard but only the standard of review on a motion to dismiss under Rule 12(b)(6) and the accompanying presumption for the nonmoving party.  69 F.4th

28  at 1096.  It would make little sense to assume that because the Ninth Circuit did not explicitly mention Rule 8 that its requirements were unnecessary.

1    Plaintiff has included photos of the Products that all contain the Crafted and Flavor labels, as
2    well as naming these products explicitly in his definition of the Products.  (ECF No. 31, ¶¶ 7, 40-
3    41.)  Next, Defendant argues that Plaintiff has prefaced his claims on unauthenticated third-party
4    sources, but on a motion to dismiss, the Court must take Plaintiff's allegations in the complaint
5    as true.  To be sure, "a plaintiff who makes allegations on information and belief must state the
6    factual basis for the belief."  <u>Neubronner v. Milken</u>, 6 F.3d 666, 672 (9th Cir. 1993).  For the
7    lead allegation that mustard seed is sourced from Canada, Plaintiff has directed the Court in his
8    operative complaint to the Crops and Livestock Products webpage from the Food and
9    Agriculture Organization of the United Nations, which unambiguously demonstrates that Canada
10   is the world's largest producer and exporter of mustard seed.  (ECF No. 30, ¶ 51 n.8.)  The Court
11   finds that this enough to be considered a factual basis for the belief that Defendant sources its
12   mustard seed, or some portion thereof, from Canada.

13           Finally, Defendant asserts that Plaintiff's claims rely upon an impermissible fishing
14   expedition, but the argument Defendant cites to is in relation to Plaintiff stating that he has no
15   way at this point in time to know the exact percentages and ratios of ingredients was in relation
16   to whether the safe harbor provision applies.  Plaintiff does not rely on this reasoning for his
17   argument regarding meeting the Rule 9 pleading standard.

18           For the forgoing reasons, the Court will recommend denying this portion of Defendant's
19   motion to dismiss.[11]

20           **E.    Defendant's Remaining Arguments**

21           Defendant brings three final arguments, seeking to dismiss certain other aspects of
22   Plaintiff's claims.  First, Defendant argues that Plaintiff lacks standing to pursue injunctive relief.
23   (ECF No. 39, pp. 16-17.)   Second, Defendant contends that the Court should dismiss any
24   equitable relief Plaintiff seeks.  (<u>Id.</u> at pp. 17-18.)  Third, Defendant asserts that Plaintiff lacks
25   standing to sue over products he never purchased.  (<u>Id.</u> at pp. 18-20.)  The Court agrees with
26   Plaintiff regarding standing to pursue injunctive relief generally; however—and significantly—

27   _____
28   [11] Having found that Plaintiff has met the Rule 9 pleading standard, the Court need not weigh into the split over
     whether Rule 9 pleading standards apply to claim of negligent misrepresentation.

1  the Court agrees with Defendants regarding equitable relief and standing to sue over products not
2  purchased.

3         **1.    Standing to Pursue Injunctive Relief**

4         The seminal case in the context of standing for injunctive relief with California consumer
5  protection statutes is <u>Davidson v. Kimberly-Clark Corp.</u>, 889 F.3d 956 (9th Cir. 2018).

6         As expounded upon in <u>Davidson</u>, a plaintiff must demonstrate constitutional standing
7  separately for each form of relief requested.  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.</u>
8  <u>(TOC) Inc.</u>, 528 U.S. 167, 185 (2000).  For injunctive relief, which is a prospective remedy, the
9  threat of injury must be "actual and imminent, not conjectural or hypothetical."  <u>Summers v.</u>
10 <u>Earth Island Inst.</u>, 555 U.S. 488, 493 (2009).  In other words, the "threatened injury must be
11 certainly impending to constitute injury in fact" and "allegations of possible future injury are not
12 sufficient."  <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 409 (2013) (internal quotation marks
13 and alteration omitted).  Past wrongs, though insufficient by themselves to grant standing, are
14 "evidence bearing on whether there is a real and immediate threat of repeated injury."  <u>City of</u>
15 <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983) (internal quotation marks omitted).  Where
16 standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient
17 likelihood that he will again be wronged in a similar way."  <u>Id.</u> at 111.  In determining whether
18 an injury is similar, courts "must be careful not to employ too narrow or technical an approach.
19 Rather, [courts] must examine the questions realistically: [courts] must reject the temptation to
20 parse too finely, and consider instead the context of the inquiry."  <u>Armstrong v. Davis</u>, 275 F.3d
21 849, 867 (9th Cir. 2001), *abrogated on other grounds by* <u>Johnson v. California</u>, 543 U.S. 499
22 (2005).

23       In resolving a split among district courts, the <u>Davidson</u> Court held "that a previously
24 deceived consumer may have standing to seek an injunction against false advertising or labeling,
25 even though the consumer now knows or suspects that the advertising was false at the time of the
26 original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or
27 hypothetical' threat of future harm."  889 F.3d at 969, quoting <u>Summers</u>, 555 U.S. at 493.
28 Importantly, "[k]nowledge that the advertisement or label was false in the past does not equate to

knowledge that it will remain false in the future." <u>Id.</u> at 969-70.  "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."  <u>Id.</u> at 970.  "In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved."  <u>Id.</u>

Here, Plaintiff has alleged that "[he] wants to purchase the Class Products again but cannot be certain that he would not be misled again in the future unless and until Defendant makes appropriate changes to its Class Products' labeling and marketing as is requested herein." (ECF No. 31, ¶ 211.)  This seems to comport with the Ninth Circuit's second example in <u>Davidson</u> noted above.  Nonetheless, Defendant asserts this "makes no sense."  The Court disagrees.  Assuming Plaintiff were successful, Defendant would either be required to domestically source its mustard seed or readjust its purportedly misleading labels.  Under either scenario, Plaintiff would be able to review a Product and make a determination about whether to purchase based on being able to trust labeling.

Defendant then raises that Plaintiff now has knowledge that Products contain mustard seed from Canada, but the Ninth Circuit has expressly qualified these types of arguments, discussing that "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future."  <u>Id.</u> at 969-70.  Defendant's offered case is distinguishable and not persuasive.  <u>See</u> <u>Trammell v. Albertsons Companies, Inc.</u>, No. 24-cv-00862-AJB-AHG2025, WL 591069, at *4-*5 (S.D. Cal. Feb. 24, 2025).  Unlike <u>Trammell</u>, Plaintiff here would have no way of knowing whether Defendant changed its practice of sourcing mustard seed from Canada to domestically if Defendant did not alter its labeling.

Accordingly, the Court will recommend denying Defendant's motion as it pertains to injunctive relief.

### 2.    Equitable Relief

In <u>Sonner v. Premier Nutrition Corporation</u>, 971 F.3d 834 (2020), the Ninth Circuit held

1   that "the traditional principles governing equitable remedies in federal courts, including the

2   requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL

3   and CLRA in a diversity action." Id. at 844.  Though Sonner went up to the Ninth Circuit on a

4   unique procedural posture—on the brink of trial following a voluntary dismissal of damages

5   claims leaving only state-law equitable claims—in Guzman v. Polaris Industries Inc., the Ninth

6   Circuit clarified that "Sonner's holding applies to equitable UCL claims when there is a viable

7   CLRA damages claim, regardless of whether the plaintiff has tried to avoid the bar to equitable

8   jurisdiction through gamesmanship.  Nothing in Sonner's reasoning suggested that its holding

9   was limited to cases in which a party had voluntarily dismissed a damages claim to avoid a jury

10  trial." 49 F.4th 1308, 1313 (9th Cir. 2022); see also Ruiz v. Bradford Exchange, Ltd., 153 F.4th

11  907, 910-12 (9th Cir. 2025) (discussing holdings from Sonner and Guzman).

12      In light of the holdings of Sonner and Guzman, it appears that for at least for cases

13  involving California's consumer protection statutes, dismissal of equitable relief can be

14  appropriate at the pleadings stage.  Though Plaintiff argues that he has pleaded equitable relief in

15  the alternative, the Court reiterates Guzman, which stated that "Sonner's holding applies to

16  equitable UCL claims when there is a viable CLRA damages claim, regardless of whether the

17  plaintiff has tried to avoid the bar to equitable jurisdiction through gamesmanship." 49 F.4th at

18  1313.  If a plaintiff cannot escape dismissal of equitable relief by not alleging legal claims in a

19  complaint, it would make little sense to allow equitable relief to go forward, in cases involving

20  the UCL, FAL, and CLRA, when pleaded in the alternative.

21      Plaintiff's caselaw is not persuasive.  Kryzhanovskiy v. Amazon.com Services, Inc., was

22  decided before Guzman.  No. 2:21-cv-01292-DAD-BAM, 2022 WL 2345677 (E.D. Cal. June 29,

23  2022).  And Olson v. FCA US LLC, has been appealed to the Ninth Circuit.  No. 2:18-cv-00360-

24  DJC-JDP, 2024 WL 4267885 (Sept. 23, 2024).  If and until the Ninth Circuit takes a separate

25  approach in Olson, the Court will operate under the principles of Guzman.

26      Because Plaintiff has an adequate remedy of law, namely the CLRA, the Court finds that

27  Plaintiff's equitable relief, including Plaintiff's UCL claim in total, must be dismissed, but that

28  dismissal must be without prejudice.  See Guzman, 49 F. 4th at 1313-14.  Thus, the Court will

1 | recommend as such.

2 | **3.    Standing to Sue Over Unpurchased Products**

3 | In addition to the Products Plaintiff explicitly discusses in the operative complaint,

4 | Plaintiff seeks to expand the putative class to people who purchased at least nine other French's

5 | products.  (See ECF No. 31-1.)  Defendant argues that Plaintiff lacks standing to pursue this

6 | avenue.  Plaintiff argues that the prevailing view in the Ninth Circuit is to allow for such a class

7 | of products so long as they are substantially similar.  The Court agrees with Defendant.

8 | There is a split in authority among district courts in the Ninth Circuit whether plaintiffs

9 | have Article III standing to bring claims for products they did not personally purchase but that

10 | were purchased by unnamed class members.  See Cordes v. Boulder Brands USA, Inc., No. CV

11 | 18-6534 PSG (JCx), 2018 WL 6714323, at *5 (C.D. Cal. Oct. 17, 2018) (collecting cases).

12 | Some courts have dismissed claims regarding non-purchased products for lack of standing.  See,

13 | e.g., Lorentzen v. Kroger Co., 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021) (acknowledging split

14 | of authority, stating "substantial similarity analysis appears to be inconsistent with the basic

15 | concept of standing" and dismissing claims based on non-purchased products); Missaghi v.

16 | Apple, Inc., No. CV-13-02003-GAF (AJWx), 2013 WL 12203021, at *8 (C.D. Cal. May 31,

17 | 2013) ("Plaintiff could not, as a matter of fact, have suffered injury from a product he never

18 | purchased, nor even claims to have seen advertisements concerning."); Banks v. R.C. Bigelow,

19 | Inc., 536 F. Supp. 3d 640, 650 (C.D. Cal. 2021) (denying motion to dismiss for lack of standing

20 | where plaintiffs "identified the products which they challenge and plausibly allege that the

21 | products are substantially similar" and noting defendants may raise this issue at the class

22 | certification stage).  Yet, some courts had described that the "'prevailing view" in the Ninth

23 | Circuit is that class action plaintiffs can bring claims for products they did not purchase 'as long

24 | as the products and alleged misrepresentations are substantially similar.'"  Id., quoting In re 5-

25 | Hour ENERGY Mktg. & Sales Practices Litig., No. MDL 13-2438 PSG (PLAx), 2014 WL

26 | 5311272, at *7 (C.D. Cal. Sept. 4, 2014).

27 | The Court is inclined to agree with courts that found that a plaintiff may sue only on

28 | behalf of products he or she actually purchased.  See TransUnion LLC v. Ramirez, 594 U.S. 413

1   (2021).  Back to basics, in order to establish standing, "a plaintiff must show (i) that he suffered

2   an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was

3   likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial

4   relief."  Id. at 423, citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992).

5   "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim

6   that they press and for each form of relief that they seek (for example, injunctive relief and

7   damages)."  Id. at 431.  "Requiring a plaintiff to demonstrate a concrete and particularized injury

8   caused by the defendant and redressable by the court ensures that federal courts decide only 'the

9   rights of individuals.'"  Id. at 423, quoting Marbury v. Madison, 1 Cranch 137, 170, 5 U.S. 137

10  (1803).  Under Article III, "federal courts do not adjudicate hypothetical or abstract disputes."

11  Id.

12          In light of these principles, the "substantial similarity" analysis appears to be inconsistent

13  with the basic concept of standing.  "The similarity of a product, by itself, says nothing about

14  whether a party suffered an injury traceable to the allegedly wrongful conduct of another."

15  Lorentzen, 532 F.Supp.3d at 909.  Moreover, a "substantial similarity" test into the principle of

16  standing "overlooks this point and invites an analysis that is both difficult to apply and unrelated

17  to its objective."  Id.  "That a suit may be a class action . . . adds nothing to the question of

18  standing, for even named plaintiffs who represent a class 'must allege and show that they

19  personally have been injured, not that injury has been suffered by other, unidentified members of

20  the class to which they belong and which they purport to represent.'"  Lewis v. Casey, 518 U.S.

21  343, 357 (internal citations omitted).

22          Here, Plaintiff bought only Dijon Mustard Made with Chardonnay, Honey Dijon and

23  Yellow Mustard, not the remaining products listed in his Exhibit A to the operative complaint.

24  (ECF No. 30-1.)  Because there is no injury as to the other enumerated products, Plaintiff lacks

25  standing to assert these unrelated claims.

26          The Court will recommend granting this portion of Defendant's motion to dismiss.

27          **F.    Leave to Amend**

28          Courts freely grant leave to amend a complaint which has been dismissed.  See Fed. R.

Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); <u>Schreiber</u> <u>Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (same). Leave to amend generally shall be denied only if amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith. <u>Leadsinger, Inc. v. BMG Music Publishing</u>, 512 F.3d 522, 532 (9th Cir. 2008).

To begin, the Court observes that Plaintiff's UCL claim and other equitable relief must be dismissed without prejudice. <u>See Guzman</u>, 49 F. 4th at 1313-14. Yet, regarding Plaintiff's CLRA and FAL claims, the Court strains to apprehend how Plaintiff could amend his complaint to overcome both the Court's findings regarding raw materials and the reasonable consumer test. Accordingly, the Court will recommend granting Defendant's motion to dismiss with prejudice as to Plaintiff's CLRA and FAL claims. That said, the parties did not truly address whether Plaintiff's claims for breach of express warranty, negligent misrepresentation, or intentional misrepresentation would likewise fail to state a claim upon amendment. Therefore, the Court cannot find that leave to amend would be futile for these claims. Accordingly, the Court will recommend granting leave to amend as to Plaintiff's claims of express warranty, negligent misrepresentation, or intentional misrepresentation.

## IV.

### ORDER AND RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss (ECF No. 10) be GRANTED IN PART and DENIED IN PART as follows:

1. The motion to dismiss be GRANTED as to Plaintiff's UCL claim and all other equitable relief, dismissed without prejudice;

2. The motion to dismiss be GRANTED as to Plaintiff's FAL and CLRA claims with prejudice;

3. The motion to dismiss be DENIED as to Defendant's argument regarding Rule 9

pleading standards;

4.  The motion to dismiss be GRANTED as to Plaintiff lacking standing to sue for products he did not himself purchase; and

5.  The motion to dismiss be GRANTED otherwise with leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 9, 2026**

STANLEY A. BOONE
United States Magistrate Judge